## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**

**8255 SECOND AVENUE LLC,**
**B & W REAL PROPERTY**
**ASSOCIATES, L.L.C., MARK L.**
**WILKIE, and**
**WAYNE COUNTY TREASURER,**

    Defendants.

Case No. 25-cv-13930
Honorable.

---

## UNITED STATES OF AMERICA'S COMPLAINT
## TO FORECLOSE ON CRIMINAL RESTITUTION LIEN

---

**NOW COMES** the United States of America, pursuant to 28 U.S.C. §§ 2001-2002, 28 U.S.C. § 3001 et seq, and 18 U.S.C. §§ 3613 and 3664, alleging as follows:

### JURISDICTION AND VENUE

1.    This is an action brought by the United States to foreclose a criminal restitution judgment lien entered in favor of the United States against Mr. Marcus Jenkins.

2.    The Court has subject matter jurisdiction under 28 U.S.C. § 1345 because the United States is the Plaintiff, and under 28 U.S.C. § 1355 because proceedings for collection of restitution are equivalent to proceedings for the

collection of fines.

3.　　The Court has jurisdiction over the parties pursuant to 28 U.S.C. §3001 et seq.; nationwide service is authorized under 28 U.S.C. § 3004.

4.　　Venue is proper under 28 U.S.C. § 1391 and 1395(a) because the underlying debt owed to the United States arose from a restitution order issued in this district, and all Defendants are residents of the Eastern District of Michigan.

## SUBJECT PROPERTY

5.　　The real property upon which the United States seeks to foreclose its lien ("Subject Property") is commonly known as 8255 Second Avenue, Detroit, MI 48202, more particularly described as:

**Lots 77 and 78, Peerless Addition No. 2, as recorded in Liber 18, Page 39 of Plats, Wayne County Records.**

6.　　The Parcel identification number for the Subject Property is also found in the Wayne County Register of Deeds as "040001866-7", "Ward 4 Item 1866-7", and "04-001866-7".

## PARTIES

7.　　Plaintiff is the United States of America.

8.　　Defendant 8255 Second Avenue LLC is a limited liability company organized under the laws of the state of Michigan.

9.     Defendant B & W Real Property Associates, L.L.C. is a limited liability company organized under the laws of the state of Michigan.  It may claim an interest in the Subject Property due to its recording a mortgage on the Subject Property in 2025, but any interest it may claim is inferior to the United States' lien.

10.     Defendant Mark L. Wilkie is provided with notice and an opportunity to be heard because he recorded a notice of lien in his individual name as to the Subject Property and subsequently recorded a release of the lien in the name of non-party Mark L. Wilkie Living Trust.  Upon information and belief, neither Wilkie nor the Trust currently claim a secured interest in the property.

11.     Defendant Wayne County Treasurer is provided with notice and an opportunity to be heard because property taxes may be owed on the Subject Property.

## NON-PARTY ENTITIES RELEVANT TO THIS ACTION

12.     Marcus Jenkins is an individual previously convicted in the United States District Court for the Eastern District of Michigan on charges of Health Care Fraud and Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 1349.  (2:11-cr-20648 PageID.757.)

13.     The Mark L. Wilkie Living Trust is an entity located in Commerce Township, MI that previously recorded a release of lien against the Subject Property in this case purporting to release the notice of lien filed by Mark L. Wilkie individually.  Upon information and belief, its Trustee is Mark L. Wilkie.

3

14.     Tenth Avenue Properties LLC is a limited liability company organized under the laws of the state of Michigan.  Upon information and belief, it is the loan server of a promissory note forming the basis of the Mark L. Wilkie Living Trust's released lien.

15.     Upon information and belief, Scott Sitner is a resident of the state of Michigan.  He is the sole member of 8255 Second Avenue LLC and the organizer of Tenth Avenue Properties LLC.  Upon information and belief, he is also a member of Tenth Avenue Properties LLC.

## UNITED STATES' LIEN INTEREST

16.     On November 13, 2011, the United States filed an indictment issued in *United States of America v. Berry et al*, Case No. 2:11-cr-20648, in which Marcus Jenkins was charged in the Eastern District of Michigan with five counts of Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 1349 and one count of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 1349. (2:11-cr-20648 ECF No. 18)

17.     On January 7, 2013, Jenkins pleaded guilty to all counts.

18.     Pursuant to a judgment imposed on March 31, 2015, Jenkins received a sentence imposing, in part, 90 months of incarceration, an assessment of $600.00, and a criminal restitution obligation in the amount of $4,777,792.76.  (2:11-cr-20648 ECF No. 115.)

4

19.     Upon entry of the Judgment, a lien arose in favor of the United States on all property and rights to property of Jenkins under 18 U.S.C. § 3613(c), including his interest in any real property.

20.     Pursuant to 18 U.S.C. § 3613(c), this lien "continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)."

21.     As of this writing, Jenkins still owes $4,756,612.14 in criminal restitution.

**CHAIN OF TITLE OF SUBJECT PROPERTY**

22.     On December 13, 2010, Jenkins purchased the Subject Property via a fiduciary deed pursuant to a court order in a state circuit court case. On December 23, 2010 the fiduciary recorded the fiduciary deed with the Wayne County Register of Deeds at Liber 48904, Page 10, and the state court order approving the sale at Liber 48904, Page 15. (Exhibits A, B)

23.     On July 9, 2015, the United States recorded a notice of its lien with the Wayne County Register of Deeds at Liber 52342, Page 939 on July 9, 2015.  (Exhibit C).

24.     At the time of entry of the judgment on March 31, 2015 and the United States' recording of notice of its lien on July 9, 2015, Jenkins held the Subject Property in fee simple, unencumbered by any other recorded lien or security interest.

25.     On May 31, 2017, Jenkins recorded a quitclaim deed at the Wayne County Register of Deeds at Liber 53753, Page 328, transferring the property to The Victory Church International. (Exhibit D)

26.     On November 23, 2021, The Victory Church International recorded a warranty deed at the Wayne County Register of Deeds at Liber 57217, Page 354, transferring the Subject Property to a George Reynolds and Rozlynne Reynolds. (Exhibit E)

27.     On February 16, 2023, George Reynolds and Rozlynne Reynolds recorded a quitclaim deed at the Wayne County Register of Deeds at Liber 58083, Page 1451, transferring the Subject Property to Defendant 8255 Second Avenue LLC. (Exhibit F)

28.     On April 10, 2023, Mark L. Wilkie recorded a notice of lien in the Wayne County Register of Deeds at Liber 58194, Page 62.  This notice, which asserts a lien of $400,000 against the Subject Property, does not reference the Mark L. Wilkie Trust.  (Exhibit G)

29.     On August 15, 2024, Defendant 8255 Second Avenue LLC sued George and Rozlynne Reynolds, Jenkins, The Victory Church International, and various corporate entities in a state circuit court action, styled *8255 Second Ave, LLC v Reynolds et al*, Wayne County Circuit Court Case No. 24-011890-CH.  This action sought to quiet title in the Subject Property.  (Exhibit H)

30.     The Complaint in *8255 Second Ave, LLC v Reynolds et al* does not name the United States as a party or make reference to the United States or its lien in any way, nor does the case file reflect service of any document in this case upon either the Attorney General of the United States or the United States Attorneys Office for the Eastern District of Michigan.  The Complaint similarly does not name Wilkie as a party or make reference to Wilkie or his notice of lien in any way.

31.     On October 21, 2024, 8255 Second Avenue LLC recorded a default judgment obtained in *8255 Second Ave, LLC v Reynolds et al* with the Wayne County Register of Deeds at Liber 59130, Page 1403.  (Exhibit I)

32.     The default judgment purports to order and adjudge Defendant 8255 Second Avenue LLC the Subject Property free and clear of all title interests prior to the date of the default judgment but that "this Order does not affect the claim of lien filed on behalf of the Mark L. Wilkie Living Trust, as recorded in Liber 58472 Page 260 [Wayne County Register of Deeds]."

33.     The document recorded in the Wayne County Register of Deeds at Liber 58472, Page 260 is a notice of lien recorded by Mark L. Wilkie in favor of the Mark L. Wilkie Living Trust against a property unrelated to this case and against an entity unrelated to this case.  (Exhibit J)

34.     On February 6, 2025, Mark L. Wilkie recorded a discharge of lien with the Wayne County Register of Deeds at Liber 59334, Page 783, asserting that the

prior lien recorded by him individually was executed by the Mark L. Wilkie Living Trust and that the lien "is hereby discharged in full and released."  (Exhibit K)

35.    On February 6, 2025, Defendant B & W Real Property Associates, L.L.C. recorded a cognovit mortgage and security agreement with the Wayne County Register of Deeds at Liber 59334, Page 762 affecting the Subject Property ("First B & W Mortgage").  This cognovit mortgage secures future advances of funds to Defendant 8255 Second Avenue LLC up to $110,000.00, not including any interest or other costs.  (Exhibit L)

36.    On July 8, 2025, Defendant B & W Real Property Associates, L.L.C. recorded another cognovit mortgage and security agreement with the Wayne County Register of Deeds at Liber 59646, Page 1057 affecting the Subject Property ("Second B & W Mortgage").  This cognovit mortgage secures future advances of funds to Defendant 8255 Second Avenue LLC up to $155,000.00, not including any interest or other costs.  (Exhibit M)

37.    On July 8, 2025, Defendant B & W Real Property Associates, L.L.C. recorded a discharge of mortgage with the Wayne County Register of Deeds at Liber 59647, Page 418, declaring the First B & W Mortgage "fully paid, satisfied and discharged."  (Exhibit N)

38.     Title to the Subject Property rests with Defendant 8255 Second Avenue LLC, subject to the criminal restitution lien recorded by the United States, and further subject to the Second B & W Mortgage.

39.     The Second B & W Mortgage is subordinate to the United States' criminal restitution lien.

40.     To date, Marcus Jenkins has neglected, failed, and/or refused to pay the full amount of the criminal restitution debt secured by the criminal restitution judgment and federal criminal restitution judgment lien.

## COUNT I - FORECLOSURE OF LIEN

41.     All prior allegations are incorporated by reference.

42.      The United States' lien arose against Jenkins at sentencing and attached to his interest in the Subject Property pursuant to 18 U.S.C. § 3613.

43.     The United States filed notice of its lien with the Wayne County Register of Deeds.

44.     The United States' lien remained attached to the Subject Property following all subsequent conveyances, including the most recent conveyance to Defendant 8255 Second Avenue LLC.

45.     The state circuit court default judgment obtained by Defendant 8255 Second Avenue LLC purporting to quiet title does not affect the United State's lien, as the United States is immune from suit in quiet title actions except where a litigant

9

complies with 28 U.S.C. § 2410, and Defendant 8255 Second Avenue failed to comply with 28 U.S.C. § 2410 in attempting to quiet title.

46.     18 U.S.C. §§ 3664(m)(1)(A)(i) and (ii) provide that "[a]n order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of [Title 18]; or by all other available and reasonable means."

47.     Under 18 U.S.C. § 3613(c), the United States' lien is treated "…as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code…"

48.     The United States is entitled to foreclose on this restitution lien as if it were a tax lien pursuant to 26 U.S.C. § 7403(c).

49.     Following judgment of foreclosure, this Court is authorized to set the terms of sale by virtue of 28 U.S.C. § 2001 provided that this sale complies with noticing requirements set forth by 28 U.S.C. § 2002.

50.     The United States is entitled to foreclose on its lien and to sell the Subject Property free and clear of liens and encumbrances so that the net proceeds can be applied to the debt owed by Jenkins.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the United States requests this court to:

A.     Determine the priority of all claims to and liens upon the Subject Property;

B.     Adjudge and decree that the criminal restitution judgment lien of the United States be foreclosed against the subject property, that the property be sold free and clear of the liens and claims of all parties having an inferior interest in the property in compliance with 28 U.S.C. § 2001-2002.

C.     Order that the proceeds of sale of the Property be distributed in the following order: (a) costs and expenses incurred in connection with the sale; (b) any valid taxes or assessments on the Property; (c) any valid prior recorded liens; (d) the remainder to the United States in partial satisfaction of Marcus Jenkins' outstanding criminal restitution obligation; and

D.     Grant to the United States any other relief circumstances may require, as the Court deems just and proper.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

By:/s/Aleksandrs K. Bomis
Aleksandrs K. Bomis
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9100
E-mail: aleksandrs.bomis@usdoj.gov
MI Bar Number: P74311

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | LIBER/PAGE # |
|---------|-------------|--------------|
| A | Deed from receiver to Jenkins | L 48904 P 10 |
| B | Court Order confirming sale | L 48904 P 15 |
| C | United States notice of lien | L 52342 P 939 |
| D | Deed from Jenkins to VCI | L 53753 P 328 |
| E | Deed from VCI to Reynoldses | L 57217 P 354 |
| F | Deed from Reynoldses to LLC | L 58083 P 1451 |
| G | Wilkie notice of lien | L 58194 P 62 |
| H | LLC state court quiet title complaint | N/A |
| I | LLC state court default judgment | L 59130 P 1403 |
| J | Wilkie notice of lien on other property | L 58472 P 260 |
| K | Wilkie discharge of lien | L 59334 P 783 |
| L | B & W first mortgage | L 59334 P 762 |
| M | B & W second mortgage | L 59646 P 1057 |
| N | B & W first mortgage discharge | L 59647 P 418 |

# EXHIBIT A

Bernard J. Youngblood
Wayne County Register of Deeds
December 23, 2010  09:33 AM
Liber 48904 Page 10-10
#2010415283  DD  FEE  $15.00

**M** STATE OF
**ICHIGAN**
Wayne County
December 23, 2010  09:33:00 AM
Receipt # 379791

**REAL ESTATE
TRANSFER TAX**
$44.00 - CO
$300.00 - ST
Stamp # 207149

# FIDUCIARY DEED

The Grantor:  **David Findling, Court Appointed Receiver in the matter of Comerica Bank vs. Lance Investment Group, LLC, H&D Property Management, LLC, Carl Dallo, Ralph Dallo, 1st Choice Sign, Inc., and James Holley, Macomb County Circuit Court Case No. 08-004746-CK, pursuant to an Order Confirming Sale entered on December 13, 2010,**

Whose Address is:  415 S. West Street, Suite 200, Royal Oak, MI 48067

Conveys to:  **Marcus C. Jenkins,** a married man

Which Address is: 27860 Weymouth Dr, Farmington Hills, M. 48334
The following described real property located  in the City of Detroit, County of Wayne, and State of Michigan, to-wit:

Lots 77 and 78, The Peerless Addition No. 2, as recorded in Liber 18, Page 39 of Plats, Wayne County Records.

Tax Item No. Ward 4 Item 1866-7          Address: 8255 Second, Detroit, MI 48202

For the full consideration of $40,000.00
The Grantor grants to the Grantee the right to make all legally permissible divisions under section 108 of the Michigan land division act, Act No. 288 of the Public Acts of 1967.
This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors, and other associated conditions may be used and are protected by the Michigan right to farm act
Subject to restrictions, reservations, easements, and leases of record, if any.

Dated:  December 15, 2010

Signed:

**This is to certify that there are not tax liens or titles on this property and that taxes are paid for FIVE YEARS previous to date of this instrument EXCEPT**
No. 13058        Date 12-23-10
WAYNE COUNTY TREASURER        Clerk

David Findling , Court Appointed Receiver in the matter of Comerica Bank vs. Lance Investment Group, LLC, H&D Property Management, LLC, Carl Dallo, Ralph Dallo, 1st Choice Sign, Inc., and James Holley, Macomb County Circuit Court Case No. 08-004746-CK, pursuant to an Order Confirming Sale entered on December 13, 2010

STATE OF MICHIGAN
COUNTY OF OAKLAND
The foregoing instrument was acknowledged before me on December 15, 2010, by David Findling, Court Appointed Receiver in the matter of Comerica Bank vs. Lance Investment Group, LLC, H&D Property Management, LLC, Carl Dallo, Ralph Dallo, 1st Choice Sign, Inc, and James Folley, Macomb County Circuit Court Case No. 08-004746-CK, pursuant to an Order Confirming Sale entered on December 13, 2010

PATRICIA A. CADENA
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND  2013
MY COMMISSION EXPIRES Dec 14, 2013
ACTING IN COUNTY OF Oakland

Drafted by:  David Findling, Esq., 415 S. West Street, Ste. 200, Royal Oak, Michigan  48067
When recorded return to:
G:\David\WP61\K - L\Lance Investmer                                    J(David)

**RETURN TO**
**First American Title Ins. Co.**
**1650 W. Big Beaver Rd., Ste. 156**
**Troy, MI  48084**
**Attn: Patty Cadena  -464450**

NOS-NRHST  PAC  CATCO

# EXHIBIT B

| STATE OF MICHIGAN JUDICIAL DISTRICT 16TH JUDICIAL CIRCUIT COUNTY PROBATE | CERTIFICATION OF RECORDS ATTESTATION OF EXEMPLIFIED COPIES | CASE NO. 2008-004746-CK |
|---|---|---|
| **Court address** 40 North Main, Mount Clemens, MI  48043 | | **Court telephone no.** 586-469-5351 |

**COMERICA BANK vs. LANCE INVESTMENT GROUP LLC et al**

| Juvenile | In the matter of | |
|---|---|---|
| Probate | In the matter of | |

### ATTESTATION OF CLERK/REGISTER

I am the clerk/register of the court and I attest that:

1. I am the custodian of the records of the 16th Circuit Court.

2. I have compared the annexed copies of:

**ORDER CONFIRMING SALE OF REAL PROPERTY DATED 12/13/10**

from the above case with the originals on file and of record in this court, and I find the copies to be true copies of the whole of such originals.

December 13, 2010

**Date**

_Carmella Sabaugh_

**Clerk/Register**

**Carmella Sabaugh**
Name(type or print)

By: _____

**Deputy Clerk/Register**

Bernard J. Youngblood
Wayne County Register of Deeds
December 23, 2010  09:33 AM
Liber 48904 Page 15-17
#2010415285  ORD  FEE: $21.00

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

COMERICA BANK, a Texas banking
association, Successor in Interest by
Merger to COMERICA BANK,
a Michigan banking corporation

               Plaintiff,

vs.

LANCE INVESTMENT GROUP, LLC,
H&D PROPERTY MANAGEMENT, LLC,
CARL DALLO, RALPH DALLO,
1ST CHOICE SIGN, INC., and
JAMES HOLLEY, jointly and severally,

               Defendant.

Hon. Richard L. Caretti
Case No. 08-4746-CK

---

Alfredo Casab, P53699
Dawda Mann Mulcahy & Sadler PLC
Attorney for Plaintiff
39533 Woodward Ave., Ste. 200
Bloomfield Hills, Mi 48304
(248) 642-8482


David Findling, P43256
Court Appointed Receiver
Kristy L. Biddinger, P71992
The Findling Law Firm, PLC
415 S. West Street
Royal Oak, MI 48067
(248) 399-9700

Carl Dallo
41544 Red Oak
Sterling Hgts., MI 48314


Leonara K. Baughman, P33534
Attorney for Oakland County Treasurer
Kilpatrick & Associates PC
903 N. Opdyke Rd. Ste. C
Auburn Hills, MI 48326
(248) 377-0700

---

## ORDER CONFIRMING SALE OF REAL PROPERTY

At a session of said Court, held in the
City of Mt. Clemens, County of Macomb,
State of Michigan,
on _____

DEC 13 2010

PRESENT: Honorable _____ RICHARD L. CARETTI _____
                              Circuit Court Judge

1

This matter having come before the Court on the Motion of the Court Appointed Receiver, David Findling, and with the Court being otherwise fully informed of the premises;

NOW THEREFORE;

IT IS HEREBY ORDERED that the Receiver's Motion to Confirm Sale of Real Property is granted.

IT IS FURTHER HEREBY ORDERED that the Purchase Agreement for the sale of the real property located in the City of Detroit, County of Wayne, State of Michigan, legally described as:

Lots 77 and 78, Peerless Addition No. 2, as recorded in Liber 18 of Plats, Page 39, Wayne County Records,

Tax Id No. Ward 4 Item 1866-7

commonly known as 8255 Second Ave., Detroit, MI 48202 (the "Property") to Marcus Jenkins for Forty Thousand Dollars and 00/100 ($40,000.00), executed by the Court Appointed Receiver, David Findling, is confirmed.

IT IS FURTHER HEREBY ORDERED that the Receiver, David Findling is authorized to execute a fiduciary deed conveying title to the Property.

_____
Circuit Court Judge


**RETURN TO:**
First American Title Ins. Co.
1650 W. Big Beaver Rd., Ste. 156
Troy, MI 48084
Attn: Patty Cadena  464450

2

# EXHIBIT C

2015291458    L: 52342 P: 939    DJL
07/09/2015 10:00:40 AM   Total Pages: 1
Bernard J. Youngblood, Register of Deeds - Wayne County, MI
**ELECTRONICALLY RECORDED**

NOTICE OF LIEN FOR FINE AND/OR RESTITUTION IMPOSED
PURSUANT TO THE ANTI-TERRORISM AND EFFECTIVE
DEATH PENALTY ACT OF 1996

| For Optional Use By Recording Office |
|---|
|  |

Serial Number
01

DEPARTMENT OF JUSTICE
United States Attorney's Office for the
Eastern District of Michigan

    **NOTICE** is hereby given of a lien against the property of the defendant named below. Pursuant to Title 18, United States Code § 3613(c), a fine or an order of restitution imposed pursuant to the provisions of subchapter C of chapter 227 is a lien in favor of the United States upon all property belonging to the person fined or ordered to pay restitution. Pursuant to § 3613(d), a notice of lien shall be considered a notice of lien for taxes for the purposes of any State or local law providing for the filing of a tax lien. The lien arises at the time of the entry of judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to § 3613(b).

Name of Defendant: Marcus Jenkins
Social Security No: ***-**-2468
Address: 8255 Second Ave., Detroit, MI 48202
Amount of Fine/Restitution: $4,778,392.76
Court Imposing Judgment: E.D. of Michigan

Court Number: 11CR20648 02
Date of Judgment: March 31, 2015

Interest Rate: 0%
Place of Filing: Wayne County, MI

If payment becomes past due, penalties totaling up to 25 percent of the principal amount past due may arise. 18 U.S.C. § 3612(g). **IMPORTANT RELEASE INFORMATION**--With respect to the lien listed above, this notice shall operate as a certificate of release pursuant to 18 U.S.C. § 3613(b) by operation of law, but no later than 20 years from date of judgment and any term of imprisonment.

This notice was prepared and signed at Detroit, Michigan, on this 6 day of July 2015.

WITNESSED BY:

_Paulette Abdullah_
Paulette Abdullah

_Sharon Bailey_
Sharon Bailey

_T.N. Ziedas_
T.N. Ziedas (P34653)
Assistant United States Attorney

State of Michigan   )
                ) SS.
County of Wayne   )

The foregoing instrument was subscribed to and sworn before me,
Kathleen M. Robinson, by T.N. Ziedas, on July 6, 2015.

_Kathleen M. Robinson_
Kathleen M. Robinson, Notary Public
My commission expires:

KATHLEEN M. ROBINSON
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Oct 20, 2018
ACTING IN COUNTY OF

DRAFTED BY AND RETURN TO:
T.N. Ziedas
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9102

# EXHIBIT D

'17 MAY-31 AM10:48

Bernard J. Youngblood
Wayne County Register of Deeds
2017215363    L: 53753 P: 328
05/31/2017 10:48 AM  QCD   Total Pages: 1

QUIT CLAIM DEED - STATUTORY FORM FOR INDIVIDUALS
================================================================

# QUIT CLAIM DEED

***Know All Men By These Presents:*** That Marcus C. Jenkins (a Married man), Whose Address is: 27860 Weymouth Farmington Hills, Michigan 48334

Convey and QUIT CLAIM to The Victory Church International, Inc. (a Michigan Non-Profit Corporation), whose Address is: 32747 Grand Traverse St, Westland, Michigan 48168.

land in the City of Detroit, County of Wayne and State of Michigan, described as:

Lot 78 & 77, S Virginia Park The Peerless Add Subdivision, as recorded in Liber 18, Page 39 of Plats, Wayne County Records.

Commonly Known AS:    8255 Second Avenue
                                        Detroit, MI 48202
Tax ID Number: 040001866-7

for the sum of   Exempt Under MCL 207.505 (a) and MCL 207.526 (a)

Object   to:   (1)   Building   and   use   restrictions   and   easements   of   Record
_____

Dated: 03/20/2017

*Marcus C Jenkins*
Marcus C. Jenkins

STATE OF MICHIGAN        } ss.
COUNTY OF ~~OAKLAND~~ WAYNE M.O.

On this 20th day of March, 2017 before me personally  appeared Marcus C. Jenkins to be known to be the person described in and who executed the foregoing instrument and acknowledged that he executed the same as A free act and deed.

*Kimberly L Sable*
Notary Public, Wayne County,
MARCH 22, 2017

My Commission expires  *July 16, 2021*

KIMBERLY L SABLE
Notary Public, State of Michigan
County of Wayne
My Commission Expires 07-16-2021
Acting in the County of Wayne

Instrument
Drafted by LUMIERE BUSINESS SOL
BRADY MUSE

Business
Address : 21700 NORTHWESTERN SOUTHFIELD
MI 48075

(Return to)                                    Register of Deeds Office

The Victory church INternational
32747 GRAND TRAVERSE ST
WESTland, MI 48168

# EXHIBIT E

'21 NOV 23 PM12:38

Bernard J. Youngblood
Wayne County Register of Deeds
2021413755          L: 57217 P: 354
11/23/2021 12:38 PM   WD    Total Pages: 1

MICHIGAN REAL ESTATE TRANSFER TAX
Wayne County Tax Stamp #613364
11/23/2021
Receipt# 21-371207  L: 57217 P: 354
State Tax: $37.50 County Tax: $5.50



## WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS: That

The Victory Church International                                    , whose address is
32747 Grand Traverse St, Westland, MI 48186                          ("Grantor(s)") convey
and warrant to  George Reynolds and Rozlynne Reynolds,                       ,
a married couple                                           , whose address is
2943 Bloomfield Park Dr, West Bloomfield, MI 48223                   ("Grantee(s)")
the following described premises situated in the ___CITY___ of ___DETROIT___, County of
___WAYNE___, and State of Michigan legally described as:

S VIRGINIA PK LOT 78 & 77 THE PEERLESS ADD SUB NO 2 LIBER 18 PAGE 39 PLATS,
W C R 4/79 110 X 163

Commonly known as: __8255 SECOND AVE, DETROIT, MI 48202__
Parcel Identification No.: __04001866-7__

together with all and singular the tenements, hereditaments and appurtenances thereunto belong in anyway pertaining, for the
sum of Five Thousand ------------------------------------------------------------------- and _00_ /100
($ _5,000.00_                          ) Dollar, subject to existing building and use restrictions, easements, restrictions,
reservations, zoning ordinances and covenants of record, if any.

This Property may be located within the vicinity of farmland or a farm operation.  Generally accepted agricultural and
management practices which may generate noise, dust, odors, and other associated conditions may be used and are protected by
the Michigan right to farm act.
If the land is being conveyed unplatted, the following is deemed to be included:  The Grantor grants the Grantee the right to
make _0_ divisions(s) under Section 108 off the Land Division Act, Act No. 288 of the Public Acts of 1967.

Dated this _22nd_ day of _November_, 20 _21_

X _____
Anthony Shannon, President  *of*
*THE VICTORY CHURCH INTERNATIONAL*

_____
Glynis D. Shannon, Member  *OF*
*THE VICTORY CHURCH INTERNATIONAL*

STATE OF _Michigan_      )
                          )SS.
COUNTY OF _Wayne_       )

The foregoing instrument was acknowledged before me this _23rd_ day of _November_, 20 _21_, by
Anthony Shannon, President and Glynis D. Shannon, Member of The Victory Church International

_____
Notary Public
County, _Wayne_              State: _MI_
My commission expires: _MAY 6, 2025_
Acting in the County of _Wayne_

**Drafted by:**
Anthony Shannon
32747 Grand Traverse St
Westland, MI 48186

**When recorded return to:**
George Reynolds
2943 Bloomfield Park Dr
West Bloomfield, MI 48223

**Send Subsequent Tax Bills to:**
George Reynolds
2943 Bloomfield Park Dr
West Bloomfield MI 48223

Recording Fee: $_____ County Transfer Tax:$ _____    State Transfer Tax: $_____

Total Transfer Tax: $_____

This is to certify that there are no delinquent property taxes owed to our office on
this property for five years prior to the date of this instrument. No representation
is made as to the status of any tax liens or titles owed to the other entities.
No. _85869_ _____ Not Examined
Date _11 23 2021_ WAYNE COUNTY TREASURER  Clerk _____

# EXHIBIT F

'23 FEB 16 AM11:03

Wayne County Register of Deeds
2023031886          L: 58083 P: 1451
02/16/2023 11:03 AM    QCD    Total Pages: 1

## *QUIT CLAIM DEED*

The Grantor: George Reynolds and Rozlynne Reynolds, a married couple, whose address is 2943 Bloomfield Park Dr., West Bloomfield, MI 48323

Quit claims to: 8255 Second Avenue, LLC, A Michigan Limited Liability Company, whose address is 8255 Second Avenue, Detroit, MI 48202.

The following described premises situated in the City of Detroit, County of Wayne, State of Michigan:

**S Virginia PK, Lot 78 and 77 The Peerless Add Sub No 2 Liber 18 Page 39 Plats
W C R 4/79 110 x 183**

**Tax Parcel ID # 04001866-7**

Commonly known as: **8255 Second Avenue, Detroit, MI 48202**

**For the sum of one dollar and zero cents ($1.00)**

Exempt from transfer tax per MCLA 207.505(a) and MCL 207.526(a)

```
DANITA JOHNSON
Notary Public - State of Michigan
County of Macomb
My Commission Expires Dec 31, 2029
Acting in the County of  Wayne
```

Dated this 15th day of February 2023

Signed by:

_____          _____
George Reynolds                     Rozlynne Reynolds

STATE OF MICHIGAN       }
COUNTY OF MACOMB        } ss.

I, Danita Johnson, a Notary Public of the County and the State written above, do hereby certify that George Reynolds and Rozlynne Reynolds appeared before me, subscribed and sworn before me this 15th day of February 2023.

Notary Public _Danita Johnson_____

| When Recorded Return To: | Send Subsequent Tax Bills To: | Drafted By: |
|---|---|---|
| Grantee | Grantee | Daniel Mercier (P72620) |
| 8255 Second Avenue, LLC | 8255 Second Avenue, LLC | 1323 Broadway 1A |
| 8255 Second Avenue | 8255 Second Avenue | Detroit, MI 48226 |
| Detroit, MI 48202. | Detroit, MI 48202. | |

Recording fee:                    Transfer tax:

# EXHIBIT G

'23 APR-10 AM10:08    '23 APR-10 AM10:26

```
Bernard J. Youngblood
Wayne County  Register of Deeds
2023120693       L: 58194 P: 62
04/10/2023 10:26 AM   LN   Total Pages: 1
```

## NOTICE OF LIEN

**PLEASE TAKE NOTICE** that pursuant to a promissory note dated February 15, 2023,

Mark L. Wilkie of 60 Seagate Unit 1201Naples FL 34103, hereby asserts a lien in the amount

of $400,000.00 , plus applicable interest, costs and fees, against the property described as: and owned by 8255 Second Ave, LLC, a michigan limited liability Company

S Virginia PK, Lot 77 and 77 The Peerless Add Sub No 2
as recorded in Liber 18 Page 39 Plats
W C R 4/79 110 x 183

Commonly known as 8255 Second Ave, Detroit MI 48202
Tax Item 04-001866-7

Mark L. Wilkie

Subscribed and sworn to before me this
27th day of February ____, 2023.

_____ Notary Public
My commission expires  02-08-2025

Drafted by and Return To:

Mark L Wilkie
60 Seagate unit 1201
Naples FL 34103

SCOTT D. SITNER
Notary Public, State of Michigan
County of Oakland
My Commission Expires 02-08-2025
Acting in the County of Wayne

# EXHIBIT H

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT

CIVIL DIVISION

8255 Second Ave, LLC a Michigan Limited
Liability Company,

     Plaintiffs                                                        CH

vs.

George Reynolds, Rozlynne Reynolds,
Marcus C. Jenkins, Cass Group, LLC a Michigan Limited
Liability Company, The Victory Church International,
A Michigan Limited Liability Company, G E Funding Transportation
LLC, a Michigan Limited Liability Company, International Consultant Group Plus, LLC a
Michigan Limited Liability Company, Monroe Street Group, LLC a Michigan Limited Liability
Company,

_____/

That there is no other complaint having been filed or dismissed
arising out of the same transaction or occurrence as alleged
In this Complaint between these parties in this or other court

_____/

Daniel Mercier (P72620)
Attorney for Plaintiffs
1323 Broadway
1A
Detroit MI 48226
248-941-4339
Danielmercier@mercierlegal.com

_____/

COMPLAINT TO QUIET TITLE

Now comes Plaintiff, 8255 Second Avenue, LLC a Michigan Limited Liability

Company, and for its Complaint to quiet title, states as follows:

24-011890-CH FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   8/15/2024 5:37 PM   Carla Keefe

1.  That Plaintiff is a duly organized Michigan Limited Liability Company and is in good standing and is the fee owner of the subject property at 8255 Second Ave, Detroit MI 48202 and is described later in this Complaint

2.  That Defendants George and Rozlynne Reynolds are previous owners of the subject property and do business in the City of Detroit County of Wayne State of Michigan.

3.  That Marcus C. Jenkins is a previous title holder to the property and upon information and belief is a resident of the City of Farmington Hills, County of Oakland.

4.  That Cass Group LLC is a Michigan Limited Liability Company doing business in the County of Wayne, State of Michigan.

5.  That GE Funding Inc and GE Funding Transportation, LLC are Michigan Companies, doing business in the City of Detroit, County of Wayne, State of Michigan and have common ownership with Defendant George Reynolds and have previously done business at the subject property.

6.  That Victory Church International LLC is a Michigan Limited Liability Company doing business in the City of Detroit, County of Wayne, State of Michigan.

7.  That International Consultant Group, LLC is a Michigan Limited Liability Company doing business in the County of Wayne, State of Michigan.

8.  That Monroe Street Group, LLC is a Michigan Limited Liability Company, doing business in the County of Wayne, State of Michigan.

9. That jurisdiction and venue are proper pursuant to Michigan law and Statute MCL 600.2932 et seq.

10. That this is an equitable action giving this Court jurisdiction.

11. That the property in question is 8255 Second Avenue, Detroit Michigan 48202 and is described as:

>
> Lots 77 and 78, The Pearless Addition Subdivision No. 2
>
> According to the Plat thereof, as recorded in Liber
>
> 18, Page 39 of Plats, Wayne County Records
>
> CKA: 8255 Second Ave, Detroit MI 48202
>
> Tax ID: 04001866-7

12. That fee simple title is currently vested in Plaintiff 8255 Second Ave, LLC a Michigan Limited Liability Company, having been transferred from the previous fee simple owners George and Rozlynne Reynolds. That all previous owners and claimants to the property have either transferred or sold their interests and discharged any lis pendens, resulting in fee title to the Plaintiff. That Plaintiff is in possession and control of the property and is filing this action to vest certainty of title in the property and has been in possession of said property for over 3 years. (Exhibit A-title search and commitment from Detroit Land and Title Company and the deed transferring property to Plaintiffs)

13. That upon information and belief there are no unrecorded conveyances.

14. That the named Defendants, after a search of Wayne County Records are all
    parties who may have had in interest in said property, even if said interests
    were all extinguished or transferred in previous matters or conveyances.

15. That Plaintiff desires to be the fee simple owner of said property and have all
    other claims of ownership extinguished, making Plaintiff the record fee simple
    owner over and above all other possible claimants.


Wherefore, Plaintiff requests that it be granted the following relief:


A.  That it be declared the fee simple owner, including legal and equitable title of
    the subject property, free and clear of all other claims of ownership and entitled
    to continued possession in fee simple absolute;

B.  That it be declared that Defendants do not have any claim of ownership or
    possession and that any claims that may have existed are terminated;

C.  Any other such relief as this Court may deem proper.


Respectfully Submitted,

/S/ DANIEL MERCIER

_____

Daniel Mercier (P72620)
Attorney for Plaintiffs
1323 Broadway
1A
Detroit MI 48226
248-941-4339

August 13, 2024

EXHIBIT A

STATEMENT OF TITLE-8255 Second Ave, Detroit MI 48202

     That Plaintiff claims title to this property by virtue of a deed filed on February 16, 2023 in the Wayne County Register of Deeds, Liber 58083 P 1451 from George and Rozlynne Reynolds a married couple, to 8255b Second Avenue, LLC a Michigan Limited Liability Company.

/S/ DANIEL MERCIER

_____

Daniel Mercier

Dated: August 14, 2024

Search Results

Return to Search Results

**You searched for:** RecordingDateID >= Fri Jan 01 00:00:00 EST 1960 and <= Thu Oct 12 00:00:00 EDT 2023 and HouseNumber=8255 and StreetName=second and TownshipID is in '0'

19 items found, displaying all items.1

Purchase Selected

Select All / None

| Description | Summary | | | | |
|---|---|---|---|---|---|
| MORTGAGE 202373171 | Rec Date: 06/04/2002 L: 36312 P: 102, ... | Grantor: H & D PROPERTY MANAGEMENT LLC | Grantee: COMERICA BANK | Preview Image | Purchase |
| | Muni: DETROIT, ... | Address: 8255 SECOND, ... | Tax ID: 04/001866-7, ... | Subd: PEERLESS ADDITION NO 2 Liber: 18 Page: 39 Lot: 77, ... | |
| MORTGAGE 202058906 | Rec Date: 12/12/2001 L: 35265 P: 619, ... | Grantor: REMEDIATION & LIABILITY MANAGEMENT | Grantee: H&D PROPERTY MANAGEMENT LLC | Preview Image | Purchase |
| | Muni: DETROIT, ... | Address: 8255 SECOND, ... | Tax ID: 04/001866-7, ... | Subd: PEERLESS ADDITION NO 2 Liber: 18 Page: 39 Lot: 77, ... | |
| QUIT CLAIM DEED 2019334059 | Rec Date: 12/04/2019 L: 55436 P: 946 | Grantor: INTERNATIONAL CONSULTANT GROUP PLUS LLC | Grantee: CASS GROUP LLC | Preview Image | Purchase |
| | Muni: DETROIT, ... | Address: 8255 SECOND, ... | Tax ID: 04/001866-7, ... | Subd: PEERLESS ADDITION NO 2 Liber: 18 Page: 39 Lot: 78, ... | |
| QUIT CLAIM DEED 2017215363 | Rec Date: 05/31/2017 L: 53753 P: 328 | Grantor: JENKINS MARCUS C MARRIED | Grantee: VICTORY CHURCH INTERNATIONAL INC | Preview Image | Purchase |
| | Muni: DETROIT, ... | Address: 8255 SECOND, ... | Tax ID: 04/0001866-7, ... | Subd: PEERLESS ADDITION NO 2 Liber: 18 Page: 39 Lot: 78, ... | |
| QUIT CLAIM DEED 2019133854 | Rec Date: 04/12/2019 L: 54987 P: 60 | Grantor: VICTOR CHURCH INTERNATIONAL | Grantee: MONROE STREET GROUP LLC | Preview Image | Purchase |
| | Muni: DETROIT, ... | Address: 8255 SECOND, ... | Tax ID: 04/001866-7, ... | Subd: PEERLESS ADDITION NO 2 Liber: 18 Page: 39 Lot: 78, ... | |
| QUIT CLAIM DEED 2019352263 | Rec Date: 12/18/2019 L: 55476 P: 25 | Grantor: CASS GROUP LLC | Grantee: VICTORY CHURCH INTERNATIONAL | Preview Image | Purchase |
| | Muni: DETROIT, ... | Address: 8255 | Tax ID: 04/001866-7, | Subd: PEERLESS ADDITION NO 2 Liber: 18 | |

EXHIBIT B

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)



## ALTA COMMITMENT FOR TITLE INSURANCE
### issued by
### DOMA TITLE INSURANCE, INC.

### NOTICE

**IMPORTANT – READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I – Requirements; Schedule B, Part II – Exceptions; and the Commitment Conditions, Doma Title Insurance, Inc., a South Carolina corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I – Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### COMMITMENT CONDITIONS

1. DEFINITIONS
   a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I – Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I – Requirements;
   f. Schedule B, Part II – Exceptions; and
   g. a counter-signature by the Company or its issuing agent that may be in electronic form.

4. COMPANY'S RIGHT TO AMEND
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

5. LIMITATIONS OF LIABILITY
   a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      i. comply with the Schedule B, Part I – Requirements;
      ii. eliminate, with the Company's written consent, any Schedule B, Part II – Exceptions; or
      iii. acquire the Title or create the Mortgage covered by this Commitment.
   b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
   e. The Company is not liable for the content of the Transaction Identification Data, if any.
   f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I – Requirements have been met to the satisfaction of the Company.
   g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM
   a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



    b.    Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

    c.    This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

    d.    The deletion or modification of any Schedule B, Part II – Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

    e.    Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

    f.    When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.**    **IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT**
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

**8.**    **PRO-FORMA POLICY**
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

**9.**    **CLAIMS PROCEDURES**
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

**10.**    **CLASS ACTION**
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

**DOMA TITLE INSURANCE, INC.**
760 N.W. 107 Avenue Suite 401, Miami, FL 33172

By:_____
    Emilio Fernandez, President

By:_____
    Valerie Jahn-Grandin, Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association                                    Commitment for Title Insurance
                                                                  2021 v. 01.00 (07-01-2021)

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**
Issuing Agent: Detroit Title and Escrow Agent
Issuing Office: 14207 Ford Road
                  Dearborn, MI 48126
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number: DT-10121
Issuing Office File Number: DT-10121
Property Address: 8255 2nd Avenue, Detroit, MI 48202
Revision Number:

## SCHEDULE A

1. Commitment Date: February 2, 2024 8:00 AM

2. Policy to be issued:
   (a) 2021 ALTA Owner's Policy
       Proposed Insured:                    **Westcork Group LLC**
       Proposed Amount of                   **$400,000.00**
       Insurance:
       The estate or interest to be         **fee simple**
       insured:
   (b) 2021 ALTA Loan Policy
       Proposed Insured:
       Proposed Amount of                   **$**
       Insurance:
       The estate or interest to be         **fee simple**
       insured:

3. The estate or interest in the Land at the Commitment Date is:
   fee simple

4. The Title is, at the Commitment Date, vested in:
   8255 Second Avenue, LLC, a Michigan limited liability company and Cass Group, LLC, as their interests may appear

5. The Land is described as follows:
   See Exhibit A attached hereto and made a part hereof.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.


American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

**DETROIT TITLE AND ESCROW AGENT**
14207 Ford Road, Dearborn, MI 48126
Telephone: (313) 846-5200

**DOMA TITLE INSURANCE, INC.**
760 N.W. 107 Avenue Suite 401, Miami, FL 33172

Countersigned by:



_____
Davin Lankford-Parnell, License #0469436
Detroit Title and Escrow Agent, License #0090444

By:_____
    Emilio Fernandez, President

By:_____
    Valerie Jahn-Grandin, Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**Page 5 of 9**

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

## SCHEDULE B, PART I – Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Payment of the full consideration to, or for the account of, the grantors or mortgagor and pay the premiums, fees, and charges for the Policy to the Company.

3. Instruments in insurable form which must be executed, delivered, and duly filed for record, to wit:

4. Pay unpaid taxes and assessments unless shown as paid:
   2023 Summer Taxes in the amount of $14,916.12 are Unpaid.
   2023 Winter Taxes in the amount of $6,646.38 are Unpaid.
   Property Address: 8255 2nd Avenue, Detroit, MI 48202
   Tax Parcel No.:  04001866-7
   Special Assessments:  $4,833.30 for Del Water/Sew included in 2023 Winter Taxes
   $100.00 for Inspection Fee included in 2023 Summer Taxes
   NOTE:  2022 and 2023 taxes has been turned over to the Wayne County Treasurer in the amount of $36,218.44.  This amount is good through 03/31/2024.
   **Payoff amount for the 2023 Delinquent Taxes remain unconfirmed.**

5. Re-Execute Quit Claim Deed recorded in Liber 55576, Page 381, Wayne County Records.

6. INTENTIONALLY DELETED.

7. Warranty Deed from 8255 Second Avenue, LLC to Westcork Group LLC.

8. INTENTIONALLY DELETED.

9. INTENTIONALLY DELETED.

10. Submit to the Company the Operating Agreement, including any amendments thereto, of International Consultant Group Plus LLC a Michigan limited liability company, and the Certificate issued by the Corporation Division of the Commercial Services Bureau of the Michigan Department of Consumer and Industry Services evidencing proper filing of the Articles of Organization.

    The above must be submitted to the Company for review before closing. The Company reserves the right to make further requirements and/or exceptions based upon examination of same.

11. Submit to the Company documentary evidence issued by the appropriate office in its state of domicile that The Victory Church International is a duly registered legal entity in good standing.

12. INTENTIONALLY DELETED.

13. INTENTIONALLY DELETED.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.


AMERICAN
LAND TITLE
ASSOCIATION

14. Submit to Detroit Title and Escrow Agent, a Release of Commercial Real Estate Broker's Lien from both the seller's and buyer's real estate broker, pursuant to the provisions of Public Act 201 of 2010, or submit Affidavits executed by the seller and buyer that they have not employed the use of a Broker or Broker's agent/employee in the transaction.

15. Submit to the Company satisfactory evidence that the property to be insured herein is not subject to either a Commercial or Industrial Facility Tax as established under Act 198 of Public Acts of 1974 or Act 255 of Public Acts of 1978. Should either tax apply, submit evidence satisfactory to the Company that all such taxes have been paid.

16. Copy of the Social Security Card and Drivers License of Marcus Jenkins.

17. INTENTIONALLY DELETED.

18. Submit to the Company the Operating Agreement, including any amendments thereto, of Westcork Group LLC, and the Certificate issued by the appropriate office in its state of domicile evidencing proper filing of the Articles of Organization.

    The above must be submitted to the Company for review before closing. The Company reserves the right to make further requirements and/or exceptions based upon examination of same.

19. Record a Release of Notice of Lis Pendens dated June 8, 2021 recorded June 21, 2021 in Liber 56816, Page 1359, Wayne County Records.

20. Approval by Doma underwriting counsel must be obtained with regard to Quit Claim Deed dated February 15, 2023 recorded February 16, 2023 in Liber 58083, Page 1451, Wayne County Records, as such deed contains some of the characteristics of a void/ invalid conveyance as set forth in Doma National Title Bulletin 2022-15.

21. Submit to the Company the Operating Agreement, including any amendments thereto, of 8255 Second Avenue, LLC, and the Certificate issued by the appropriate office in its state of domicile evidencing proper filing of the Articles of Organization.

    The above must be submitted to the Company for review before closing. The Company reserves the right to make further requirements and/or exceptions based upon examination of same.

22. Record a Release of Notice of Lien in the original amount of $400,000.00 filed against 8255 Second Avenue, LLC in favor of Mark L. Wilkie dated February 27, 2023 recorded April 10, 2023 in Liber 58194, Page 62, Wayne County Records.

23. Re-Execute Discharge of Lis Pendens recorded in Liber 58193, Page 1424 to correct reference Liber and Page number.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



## SCHEDULE B, PART II – Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage / deed of trust thereon covered by this Commitment.

2. Any rights, interests or claims of parties in possession of the land not shown by the public records.

3. All easements, rights-of-way, streets, roads or railways affecting the land not shown in the public records.

4. Any encroachments, overlaps, overhangs, violated restrictions, set-back line violations, boundary line disputes, variations in area, party walls, easements and any other matters which would be disclosed by an accurate survey or inspection of the land.

5. Any lien or right to lien, for services, labor, or materials imposed by law and not shown by the public records.

6. Any claim that any part or all or of the land is or was underwater and riparian rights, if any.

7. Taxes and assessments for the year(s) 2024, and all subsequent years (which are shown as existing liens by the public records) which are not yet due and payable.

8. Any lien or right to lien in favor of any village, city, county or other municipality for unpaid service charges for water, sewer or gas systems supplying the land.

9. Any mortgage or deed or trust or other encumbrance entered into or granted by the insured.

10. Any loss or claim arising from unpaid or not yet assessed fines or tickets levied by the municipality or county offices that have yet to be transferred to the Summer or Winter tax rolls. Fines and fees include but are not limited to blight violations, lawn cutting, demolitions and/or inspection cost.

11. Terms and conditions of Affidavit of Historic Designation Restrictions recorded in Liber 23109, Page 629, Wayne County Records.

12. Any and all water and drainage charges, present and future.

13. Building and use restrictions and other terms, covenants, conditions, agreements, obligations and easements, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604 (c), disclosed by instrument recorded in Liber 21080, Page 610 and in Liber 21955, Page 187 and Liber 22175, Page 651, Wayne County Records.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

## EXHIBIT "A"

The Land referred to herein below is situated in the County of Wayne, State of Michigan, and is described as follows:

Lots 77 and 78, The Pearless Addition Subdivision No. 2, according to the plat thereof, as
recorded in Liber 18, Page 39 of Plats, Wayne County Records.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Doma Title Insurance, Inc.. This Commitment is not valid without the
Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions;
and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**Page 9 of 9**

# EXHIBIT I



'24 OCT-21 PM 8 :45

Bernard J. Youngblood
Wayne County Register of Deeds
2024268589      L: 59130 P: 1403
10/21/2024 08:45 AM   JDG   Total Pages: 4

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT
CIVIL DIVISION

8255 Second Ave, LLC a Michigan Limited
Liability Company,

      Plaintiffs

vs.

George Reynolds, Rozlynne Reynolds,
Marcus C. Jenkins,  Cass Group, LLC a Michigan Limited
Liability Company,  The Victory Church International,
A domestic non-profit company,
International Consultant Group Plus, LLC a Michigan Limited Liability Company,
Monroe Street Group, LLC a Michigan Limited Liability Company,
_____/

24-011890-CH
Hon Kathleen McCarthy

**DEFAULT JUDGMENT QUIETING TITLE  OF 8255 SECOND AVE, DETROIT, MI  48202 TO
PLAINTIFF 8255 SECOND AVENUE, LLC**

At a session of said Court, held in the
Courthouse, Wayne County, State of
Michigan

Dated:____10/18/2024____

Present:

JUDGE KATHLEEN M. MCCARTHY
_____

Circuit Court Judge

Plaintiff having filed a complaint to quiet title to the property located at 8255 Second Ave, Detroit MI 48202, the complaint having been served and defaults having been filed with this Court against all parties, and the Court being otherwise fully advised in the premises,

It is hereby ordered and adjudged;

That the full legal and equitable title to the property, 8255 Second Ave, Detroit MI 48202, in fee simply absolute, free and clear of all present and future claims of all parties, named or unnamed, as of the date of this Order and their/its heirs and assigns and successors and those claiming by and through them, including but not limited to title interests existing prior to the date of this Order, including title interests of any kind prior to said date, is hereby quieted to the Plaintiff, 8255 Second Avenue, LLC a Michigan Limited Liability Company, for certain real property located in the City of Detroit, County of Wayne, State of Michigan, free and clear of all title interests prior to the date of this Order, and as of said date, and further described as:

S Virginia Park Lot 78 and 77, The Peerless
Add Sub No 2, L18, P 39,
WCR 4/79110 x 163
Parcel ID 04001866-7

C/K/A 8255 Second Ave Detroit MI 48202.

That a certified copy of this judgment shall be filed in the Wayne County Register of Deeds.

That this Order does not affect the claim of lien filed on behalf of the Mark L. Wilkie Living Trust, as recorded in Liber 58472 Page 260, WCR.

No. A 136405    E 314 BK 24-011890-CH

**CERTIFIED COPY — LAW**

2024268589    **Page 3 of 4**

STATE OF MICHIGAN, ⎫
County of Wayne   ⎬ ss.
           ⎭

I, CATHY M. GARRETT, Clerk of Wayne County, and Clerk of the Circuit Court for the County of Wayne, do hereby certify, that the above and the foregoing is a true and correct copy of

Default Judgment quieting title of 8255
Second Ave, Detroit, MI 48202 to plaintiff
8255 Second Avenue, LLC

entered in the above entitled cause by said Court, as appears of record in my office. That I have compared the same with the original, and it is a true transcript therefrom, and of the whole thereof.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said Court and County, at Detroit, this day of ———— **OCT 2 1 2024** ———— A.D. 20 ————

CATHY M. GARRETT, Clerk

Fee, $ 13.00    _James M. Malone_ ————, Deputy Clerk

That this is a final order and resolves  all pending claims.

/s/ Kathleen M. McCarthy
October 18, 2024
Circuit Court Judge

Approved as to form:

/S/ DANIEL MERCIER

Daniel Mercier
Attorney for Plaintiff

# EXHIBIT J

'23 SEP-26 AM 8 :32

```
Bernard J. Youngblood
Wayne County  Register of Deeds
2023250637        L: 58472 P: 260
09/26/2023 08:32 AM    LN    Total Pages: 1
```

## NOTICE OF LIEN

**PLEASE TAKE NOTICE** that pursuant to a promissory note dated September 7th,

2023, executed by Mouton Estates, LLC, a Michigan Limited Liability Company, promisor; in

favor of Mark L. Wilkie Living Trust of 870 Teaberry Place, Commerce Township MI 48390,

hereby asserts a lien in the amount of $212,000, plus any applicable interest and fees pursuant to

the terms of said note, against the property described as:

> N OUTER DRIVE 214 AND S 9 FT OF VAC ALLEY ADJ BLENHEIM
> FOREST SUB L55 P39 PLATS W C R16/411 58 X 149
> 16/411 58 X 149

> Wayne County Records

> Tax ID: 16 00 8999

Commonly known as 4040 West Outer Drive Detroit MI 48221

_____
Mark L. Wilkie

Subscribed and sworn to before me this
7th          day of September, 2023

_____ Notary Public
My commission expires 02·08· 2025

Drafted by and Return To:

Mark Wilkie
60 Seagate, Unit 1201
Naples, FL 34103

SCOTT D. SITNER
Notary Public, State of Michigan
County of Oakland
My Commission Expires 02-08-2025
Acting in the County of Wayne

# EXHIBIT K

**2025030340     L: 59334 P: 783     DIS**
**02/06/2025 01:58:30 PM  Total Pages: 1**
**Bernard J. Youngblood, Register of Deeds - Wayne County, MI**
**ELECTRONICALLY RECORDED**

# DISCHARGE OF LIEN

**PLEASE TAKE NOTICE** that the lien executed by the Mark L. Wilkie Living Trust,

dated  February 27th, 2023  and recorded on April 10, 2023, against the below described

property owned by  8255 Second Ave, LLC a Michigan Limited Liability Company, and

recorded in Liber 58194, Page 62 of Wayne County Records, in favor of the  Mark L. Wilkie

Living Trust of  870 Teaberry Place, Commerce Township  MI  48390, and against the property

described below:

      S Virginia PK Lot 77 and 78 The Peerless  Add Sub No 2
      As recorded in Liber   18 Page 39 of Plats
      Wayne County Records 4/79 110 x 183
      Tax ID: 04-001866-7

      Commonly known as 8255 Second Ave, Detroit  MI  48202

is hereby discharged in full and released

                        Mark L. Wilkie

Subscribed and sworn to before me this
26th        day of January, 2025

_____Notary Public
My commission expires _02-08-2031_

Drafted by and Return To:

Mark L. Wilkie
60 Seagate, Unit 1201
Naples,  FL  34103

SCOTT SITNER
Notary Public, State of Michigan
County of Oakland
My Commission Expires Feb. 08, 2031
Acting in the County of _____

# EXHIBIT L

**2025030339    L: 59334 P: 762    MTG**
**02/06/2025 01:58:30 PM  Total Pages: 21**
**Bernard J. Youngblood, Register of Deeds - Wayne County, MI**
**ELECTRONICALLY RECORDED**

**THIS IS A MORTGAGE WHICH SECURES A BALLOON PROMISSORY NOTE AND THE FINAL PRINCIPAL PAYMENT OF - OR THE INITIAL PRINCIPAL BALANCE DUE UPON MATURITY IS - $110,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, EXIT FEE AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

## COGNOVIT MORTGAGE AND SECURITY AGREEMENT
### Future Advances
**Notice:  This Cognovit Mortgage secures all future advances from Lender to Mortgagor, as defined below; however, in no event shall the principal amount secured at any one time exceed the sum of $110,000.00 (One Hundred Ten Thousand and 00/100 Dollars).**

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH THIS AGREEMENT, OR ANY OTHER CAUSE.**

THIS COGNOVIT MORTGAGE AND SECURITY AGREEMENT (hereinafter, the "Mortgage") made and executed this 31ˢᵗ day of January 2025, by 8255 Second Avenue, LLC, a Michigan limited liability company ("Mortgagor"), whose mailing address 1778 Grant, Birmingham, MI 48009, to and in favor of B & W Real Property Associates, L.L.C., whose address is 18175 Maryland, Southfield, MI 48075 (hereinafter referred to as "Mortgagee" or "Lender"), and secured party.

### RECITALS:
WHEREAS, Mortgagor is the fee simple owner of real property located at 8255 Second Avenue, Detroit, MI 48202 and seeks financing for business purposes in the amount of **One Hundred Ten Thousand and 00/100 Dollars ($110,000.00)** (the "Loan"), unconditionally guaranteed ("Guaranty") by Scott Sitner ("Guarantor"), pursuant to the terms of a certain Guaranty of Payment and Performance Agreement (the "Agreement") and Cognovit Balloon Promissory Mortgage Note, both of even date herewith, and both incorporated herein by reference and as the same may be amended, modified, supplemented, extended, substituted and restated from time to time (collectively, the "Note"); and

WHEREAS, the total indebtedness to be secured by this Mortgage is **One Hundred Ten Thousand and 00/100 Dollars ($110,000.00),** plus any applicable pre-payment fee, accrued

1

interest, costs and other fees, if any, and all other charges and expenses secured herein to the Property described above and below and specifically in the Note; and

WHEREAS, the execution and delivery of this Mortgage is a condition precedent to Mortgagee's obligation to extend the Loan to Borrower.

## WITNESSETH:

WHEREAS, the Mortgagor is justly indebted to Mortgagee for the Loan pursuant to the Note, and this Mortgage is given to secure and shall secure the following (hereinafter referred to collectively as the "Indebtedness"):

a)       the payment of any sums and all sums, principal, interest and agreed charges, becoming due and payable by the Mortgagor under or with respect to the Note, of even date herewith, in the original principal amount of **$110,000.00**, executed by the Borrower in favor of the Mortgagee; and

b)       the payment of any and all sums now or hereafter becoming due and payable by the Mortgagor to the Lender under the terms of this Mortgage, including, but not limited to, advances made by the Lender pursuant to the terms and conditions of the Note and this Mortgage; and

c)       the payment of all renewals and extensions of any or all obligations of the Mortgagor described in (a) and (b), above, whether or not any renewal or extension agreement is executed in connection therewith; and

d)       the full and complete performance of each and every obligation, covenant, duty and agreement of the Mortgagor contained in this Mortgage.

WHEREAS, the Mortgagee, as a condition precedent to the extension of credit or the making of the Loan evidenced by the Note has required that the Mortgagor provide Mortgagee with security for the payment or repayment of the Indebtedness represented by the Note as well as for the performance, observance and discharge by the Mortgagor of the various covenants, stipulations and agreements made by the Mortgagor to, with, in favor and for the benefit of Mortgagee with respect to the Indebtedness and such security.  The Note and this Mortgage and any other document or instrument executed and delivered by Mortgagor to and in favor of Mortgagee as security for or evidence of the Loan, are hereinafter referred to collectively as the ("Loan Documents").

**NOW, THEREFORE**, in consideration and in order to secure the payment or repayment of the indebtedness evidenced and represented by the Note, together with interest on the Indebtedness, as well as the payment of all other sums of money secured hereby, as hereinafter provided, and also to secure the observance performance and discharge by the Mortgagor of all covenants, stipulations and agreement set forth in the Note, this Mortgage and in all other Loan Documents and in order to charge the properties, interests and  rights hereinafter described with such payment, observance, performance and discharge, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor does hereby grant, bargain, sell, alien, remise, release, convey, assign, transfer, pledge, deliver, set over, hypothecate, warrant and confirm unto Mortgagee, its successors and assigns forever, the following described properties, rights and interests (all of which are hereinafter referred to as the "Mortgaged Property"), to wit:

2

ALL THAT certain pieces, parcels or tracts of land or real property owned by the Mortgagor located at and previously defined above as 8255 Second Avenue, Detroit, MI 48202 (hereinafter collectively referred to as the "Real Property" or "Property") of which the Mortgagor is now seized and in actual or constructive possession, legally described as follows:

**See Attached Legal Description in Exhibit A**

TOGETHER WITH all buildings, structures and other improvements of any kind, nature, or description (hereinafter sometimes together referred to as the "Improvements") now or hereafter erected, constructed, placed or located upon said Real Property, including, without limitation, any and all, additions to substitutions for or replacements of such Improvements;

TOGETHER WITH all and singular, the tenements hereditaments, strips and gores, rights-of-way, easements, privileges and other appurtenances now or hereafter belonging or in any way appertaining to the Real Property including, without limitation, all right, title, interest of the Mortgagor in any after acquired right, title, interest, remainder or reversion, in and to the beds of any ways, streets, avenues, roads, alleys, passages and public places, pen or proposed, in front of, running through, adjoining or adjacent to said Real Property (hereinafter, "Appurtenances");

TOGETHER WITH any and all lease, rents, royalties, issues, revenues, profits, proceeds, income and other benefits, including accounts receivable, of, accruing to or derived from the Real Property, Improvements and Appurtenances (hereinafter sometimes together referred to as "Rents");

AS WELL AS all fixtures, goods, chattels, construction, materials, furniture, furnishings, equipment, machinery, apparatus, appliances, and other items of personal property, whether tangible or intangible, of any kind, nature or description, whether now owned or hereafter acquired by the Mortgagor, which is, are or shall hereafter be located upon, attached, affixed to or used, either directly or indirectly, in connection with the complete and comfortable use, occupancy and operation of said Real Property and Improvements, including, without limitation, any and all licenses, any and all licenses, permits or franchises, used or required in connection with such use, occupancy or operation, together with any and all additions, replacements or substitutions thereto, thereof, or therefore as well as proceeds thereof or therefrom regardless of form (hereinafter referred to as "Fixtures and Personal Property"). The Mortgagor hereby expressly grants to Mortgagee a present security interest in and lien and encumbrance upon said Fixtures and Personal Property;

TO HAVE AND TO HOLD all of the same unto the Mortgagee and its successors and assigns in fee simple forever;

## ARTICLE I
## REPRESENTATIONS AND WARRANTIES

Mortgagor hereby represents and warrants to Mortgagee that:

1.1   <u>Validity of Loan Documents.</u> (i) The execution, delivery and performance by Mortgagor of the Loan Documents, and the borrowing evidenced by the Note, will not violate any governmental requirement, or any indenture,  agreement or other instrument to which Mortgagor

3

is a party or by which it or any of its property is bound, or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated by the provisions of the Loan Documents ; and (ii) the Loan Documents constitute the legal, valid and binding obligations of Mortgagor and other obligors named therein, if any, in accordance with their respective terms.

      1.2    <u>Other Agreements</u>.    Mortgagor is not a party to any agreement or instrument materially and adversely affecting it or its present or proposed businesses, properties or assets, operation or condition, financial or otherwise, and Mortgagor is not in default in the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument to which it is a party.

      1.3    <u>Other Information</u>.    All other information, including reports, certificates, papers, data and otherwise given and to be given to Mortgagee with respect (i) to Mortgagor (ii) to the Loan and (iii) to others obligated under the terms of the Loan Documents, are true, accurate and correct in all material respects and complete.

      1.4    <u>Title.</u>

      (a)    Mortgagor hereby represents and warrants that Mortgagor is indefeasibly seized of the Mortgaged Property and has good right, full power, and lawful authority to convey and encumber all of the same aforesaid; Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same and the validity and priority of the lien and encumbrance of this Mortgage against the lawful claims of all persons whomsoever; and the Mortgaged Property is free and clear of all liens and encumbrances of any kind, nature or description; save and except any (with respect to said Real Property, Improvements and Appurtenances) real property taxes for years subsequent to January 1, 2025.

      (b)    PROVIDED ALWAYS, however, that if the Mortgagor shall pay unto the Mortgagee the indebtedness evidenced and represented by the Note and if the Mortgagor shall duly, promptly and fully perform, discharge, execute, effect, complete and comply with and abide by each and every one of the stipulations, agreements, conditions and covenants of the Note, this Mortgage and all other Loan Documents, then this Mortgage and the estates and interest hereby granted and created shall cease, terminate and be null and void;

      1.5    <u>Hazardous Substances.</u>

      (a)    To Mortgagor's knowledge and belief, the Mortgaged Property is not now nor has it been, in violation of any applicable federal, state or local law, statute, ordinance, code, rule or regulation, including but not limited to, any Environmental Law; the Mortgaged Property is free of Hazardous Substances; and there are not pending investigations, claims or threats of claims with respect to the Mortgaged Property by any governmental authority or other person relating to any Environmental Law.

      (b)    As used in this Mortgage "<u>Hazardous Substances</u>" shall mean and include all pollutants, containment, toxic or hazardous wastes, and other substances (including, without

limitation, asbestos and urea formaldehyde foam insulation), the removal of which is required or the manufacture, use, maintenance or handling of which is regulated, restricted, prohibited or penalized by an Environmental Law, or even though not so regulated, restricted, prohibited or penalized, might pose a hazard to the health and safety of the occupants of the property on which it is located or the occupants of the property/adjacent thereto. Environmental Law" shall mean and include any federal, state or local law or ordinance relating to pollution or protection of the environment including any relating Hazardous Substances, and any and all regulations, codes, plans, orders, decrees, judgments, injunctions, notices and demand letters issued, entered, promulgated or approved thereunder.

1.6    Litigation. There are no judgments outstanding against Mortgagor and there is no action, suit, proceeding, or investigation now pending (or to the best of Mortgagor's knowledge after diligent inquiry, threatened) against, involving or affecting Mortgagor, or the Mortgaged Property, or any part thereof, at law, in equity or before any governmental authority that if adversary determined as to the Mortgaged Property, or as to the Mortgagor would result in a material adverse change in the business or financial condition of the Mortgagor, or Mortgagor's ownership of the Mortgaged Property, nor is there any basis for such action, suit, proceeding or investigation.

1.7    No violations. Mortgagor has not violated any governmental requirement, covenant, condition, restriction, easement or similar matter affecting the Mortgaged Property or Improvements, and Mortgagor has not received any notice of violation from any governmental authority or any other person with respect to any of the foregoing matters.

1.8    Taxes. Mortgagor knows of no federal, state, county and municipal income tax returns required to have been filed by it, which through Mortgagor's failure to file could result in a lien against the Mortgaged Property or any pending claim of assessment, which may involve any charge being levied or assessed, or which may result in the creation of any lien upon the Mortgaged Property.

1.9    No Default. No default or event of Default exists under any of the Loan Documents; and no event has occurred and is continuing which, with notice or the lapse of time, or both, would constitute a default under any provision thereof.

1.10    Fictitious Name Statute.    Mortgagor, if applicable, has duly complied with all of the requirements of applicable Fictitious Name Statute, if any.

1.11    Condition of Mortgaged Property.    The Mortgaged Property or any part thereof, nor existing, is not damaged or injured as a result of any fire, explosion, accident, flood, or other casualty. The Improvements, if any, as of the date of this Mortgage, are free and clear of any defects in material, structure and construction and do not violate any governmental requirements. To the best of Mortgagor's knowledge there is no existing, proposed or contemplated plan to modify or realign any street or highway or any existing, proposed or contemplated eminent domain proceeding that would result in the taking of all or any part of the Mortgaged Property or that would adversely affect the use or the operation of the Mortgaged Property.

    1.12   <u>Zoning.</u>  The Real Property is zoned so as to permit the Real Property and Improvements to be used for their intended purpose.

    1.13   <u>Reliance on Representations</u>. The Mortgagor acknowledges that the Mortgagee has relied upon the Mortgagor's representations, has made no independent investigation of the truth thereof, is not charged with any knowledge contrary thereto that may be received by an examination of the public records and the county(s) wherein the Real Property is located, or that may have been received by an agent of the Mortgagee.

# ARTICLE II
# <u>COVENANTS OF MORTGAGORS</u>

    The Mortgagor, for the benefit of the Mortgagee, and its successors and assigns, does hereby expressly covenant and agree:

    2.1   <u>Payment.</u>   To pay the principal of the Indebtedness evidenced and represented by the Note, together with all interest thereon, in accordance with the terms of the Note, promptly at the time, at the place, and in the manner that said principal and interest shall respectively become due, and to promptly and punctually pay all other sums required to be paid by the Mortgagor pursuant to the terms of the Mortgage.

    2.2   <u>Performance.</u>  To perform, comply with and abide by each and every one of the covenants, stipulations, agreements and conditions and set forth in said Note, this Mortgage and any and all Loan Documents.

    2.3   <u>Maintenance of Property.</u>   To keep all Improvements now existing or hereafter erected on the Real Property in good order and repair (normal wear and tear expected) and not to do or permit waste thereof or thereon, nor to alter, remove or demolish any of said improvements or any Fixtures or Personal Property attached or appertaining thereto without the prior written consent of the Mortgagee, not to be or permit any other act whereby the Mortgaged Property shall become less valuable, to be used for purposes contrary to applicable law, or to be used in any manner which will increase the premium for or result in a termination or cancellation of the insurance hereinafter required to be kept and maintained on the Mortgaged Property. In furtherance of, and not be away of limitation upon, the foregoing covenant, Mortgagor shall effect such repairs as the Mortgagee may reasonably require, and from time to time make all needful and proper replacements so that said Improvements, appurtenances, Fixtures and Personal Property will, at all times, be in good condition, fit and proper for the respective purposes for which they were originally erected or installed, Mortgagee, or its agents, shall have the right and shall be permitted, but shall not be required, at all reasonable times, and upon reasonable prior notice thereof, to enter upon and inspect the Mortgaged Property to insure compliance with the foregoing covenants and any and all other covenants, stipulations, agreements and conditions set forth in this Mortgage.

    2.4   <u>Payment of Taxes.</u>
    (a)     In the event Mortgagee does not escrow funds for and pay taxes (as hereinafter defined) Mortgagor shall pay all and singular such taxes, assessments and public charges as are already levied or assessed or that that may be hereafter levied or assessed upon or against the

6

Mortgaged Property, (collectively the "Taxes") when the same shall be become due and payable according to law, before they become delinquent, and before any interest or penalty shall attach thereto, and will deliver official receipts evidencing the payments of the same to the Mortgagee not later than thirty (30) days following the payment of the same, with the exception of ad valorem Taxes which shall be paid no later than November 30 of the year in which such Taxes are assessed and notice of such payment shall be delivered to Mortgagee no later than December 31 of that year.

(b)     Notwithstanding anything to the contrary in the foregoing Section 2.4 (a) if required by Mortgagee, Mortgagor shall pay on the payment date of installments of principal and interest as provided in the Note, together with and in addition to such installments of principal and interest, an installment of the Taxes in an amount sufficient, as estimated by Mortgagee, to accumulate the sum required to pay such taxes, as applicable, thirty (30) days prior to the due date thereof. Amounts held hereunder shall be the Mortgagee's, and no interest shall be payable with respect thereto. Upon demand of Mortgage, Mortgagor shall deliver to Mortgagee, within ten (10) days after such demand, such additional money as is necessary to make up any deficiencies in the amount necessary to enable Mortgagee to pay such Taxes when due. In case of any Event of Default, Mortgagee may apply any amount under this Section remaining to Mortgagor's credit to the reduction of the Indebtedness, at such times and in such manner as Mortgagee shall determine.

2.5     <u>Discharge of Liens.</u>    To immediately pay or discharge from time to time when the same shall become due all lawful claims and demands of mechanics, materialmen, laborers, and others, which, if unpaid, might result in, or permit the creation of, a lien, or encumbrance upon the Mortgaged Property or any part thereof, or on the rents, issues, income, revenues, profits and proceeds arising therefrom, and in general, to do cause to be done everything necessary so that the lien of this Mortgage shall be fully preserved at the cost of the Mortgagor, without expense to the Mortgagee.

2.6     <u>No Subordinate Financing.</u>    To not permit or cause any subordinate mortgages, liens or other encumbrances to be imposed against the Mortgage property while there remains any outstanding principal balance of this Mortgage.   In the event any mortgage, lien or other encumbrance attached to the Mortgaged Property and is not removed within thirty (30) days of its attaching to said Mortgaged Property, the Mortgagee, or its assigns, may accelerate the outstanding principal balance and all accrued but unpaid interest thereon and exercise all default remedies under this Mortgage and available at law and in equity. The Mortgagee, at its sole, absolute and unfettered discretion, shall be entitled to accelerate the maturity of the Indebtedness secured hereby and exercise any and all remedies provided and available to Mortgagee hereunder, in the event that the holder of any secondary or junior lien or encumbrance on the Mortgaged Property shall, through foreclosure or other proceedings, acquire title to the Mortgaged Property.

2.7     <u>Insurance.</u>

(a)     To continuously keep the Improvements and the Fixtures and Personal Property now or hereafter existing, erected, installed and located in or upon the Real Property insured against loss or damage by or abatement of rental or other income resulting from flood, fire, windstorm, extended coverage and such other hazards, casualties and contingencies and perils as may be reasonably required by Mortgagee and in an amount which is equal to the full insurable

value of the Mortgaged Property during the term hereof. All such insurance shall be carried with such company or companies as may be reasonably acceptable to the Mortgagee and the original policy or policies and renewals thereof, (or at the option of the Mortgagee, duplicate originals or certified copies thereof) together with receipts evidence of payment of the premium therefore shall be deposited with, held by and are hereby assigned to Mortgagee as additional security for the deposit therewith, held by and are hereby assigned to Mortgagee as additional security for the indebtedness secured hereby. Each such policy of insurance shall contain a non-contributing loss payable clause in favor of and in form acceptable to Mortgagee and shall provide for not less than thirty (30) days prior written notice of modifications, cancellation, termination or expiration to Mortgagee. In the event of loss by reason of the hazards, casualties, contingencies and perils for which insurance has been required by the Mortgagee, the Mortgagor and the Mortgagee, at its potion, may make proof of loss if not made promptly by the Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Mortgagee, instead of to the Mortgagor and Mortgagee jointly, and the Mortgagor hereby authorizes Mortgagee to adjust and compromise any losses for which insurance proceeds are payable under any of the aforesaid insurance policies and, after deducting the costs of collection, payable under any of the aforesaid insurance policies and, after deducting the costs of collection, to apply the proceeds of such insurance, at its option, as follows, to wit: (a) first, to the restoration or repair of the insured Improvements, Fixtures, and Personal Property provided that, in the reasonable opinion of the Mortgagee, such restoration or repair is reasonably practical and, provided further, that in the reasonable opinion of the Mortgagee, either: (I) the insurance proceeds collected are sufficient to cover the costs of such restoration or repairs of damage or destruction with respect to which such proceeds were paid, or (ii) the insurance proceeds of collected are not sufficient in themselves to cover the costs of such restoration or repair, but are sufficient therefore when taken together with funds provided and are available by the Mortgagor from other sources; in which event the Mortgagee shall make such insurance proceeds available to the Mortgagor for the purpose of effecting such restoration or repairs; but Mortgagee shall not be obligated to see to the proper application of such insurance proceeds nor shall the amount of funds so released or used to be deemed to be payment of or on account of the Indebtedness secured hereby, and (b) second, to the reduction of the Indebtedness secured hereby as a credit account thereof in inverse order of maturity in the event that such insurance proceeds are not, in the reasonable opinion of the Mortgagee, sufficient to cover the costs of such restoration repairs, and the Mortgagor does not provide and make available sufficient funds from other sources to make up the deficiency between the amount of insurance proceeds and the estimated costs of such restoration and repairs. None of such actions taken by the Mortgagee shall be deemed to be or result in a waiver or impairment of any equity, lien, or right of the Mortgagee under this Mortgagee under this Mortgage or other transfer of title of the Mortgaged Property in extinguishment of the Indebtedness secured hereby, all right, title and interest of the Mortgagor in any to any insurance policies then in force and insurance proceeds then payable shall pass to the purchaser or grantee.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, any proceeds payable to the Mortgagor are hereby assigned and shall be paid to Mortgagee for application to the sums secured by the Mortgage with any excess paid to the Mortgagor.

2.8    Compliance with Laws.

8

(a)     To observe, abide by and comply with all statutes, ordinances, orders, requirements or decrees relating to the Mortgaged Property enacted, promulgated or issued by any federal, state or municipal authority or any agency or subdivision thereof, and to observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits, (including, but not limited to, zoning variances, special exceptions and non-confirming uses), privileges, franchises and concessions which are applicable to the Mortgaged Property or which have been granted to or contracted for or by Mortgagor in connection with any existing, presently contemplated or future use of the Mortgaged Property.

2.9     Indemnification.

(a)     Mortgagor shall at its own expense, and does hereby agree to, protect, indemnify, defend and hold Mortgagee and its attorneys harmless from and against any and all liability, loss, expense, suits, proceedings, claims, demands, or damages of any kind or nature (including attorneys' fees and expenses paid or incurred in connection therewith) arising out of or by reason of (i) an incorrect legal description of the Real Property, (ii) any action, or inaction of Mortgagee in connection with the Note, this Mortgage, or any other Loan Documents, (iii) the constructions of the Improvements, (iv) the use and operation of the Mortgaged Property, or (v) the presence on or under, or he escape, seepage, leakage, spillage, discharge, emission, or release from the Mortgage Property (or any part thereof) of any Hazardous Substance (including, without limitation, any limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorney's fees, costs of any settlement or judgment or claims asserted, or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any so-called federal, state or local "Superfund" or "Super lien" laws, statutes, ordinances, codes, rules, regulations, orders or decrees regulating, with respect to, or imposing liability, including strict liability, in connection with any Hazardous Substance of standards of conduct concerning any Hazardous Substance), regardless of whether within the control of Mortgagee, so long as the act or omission in question occurs subsequent to Mortgagor's possession of the Mortgaged Property and prior to the sale of the Mortgaged Property and complete dispossession of the Mortgagor therefrom.

(b)     The indemnifications of this paragraph shall survive the full payment and performance of the Indebtedness and the satisfaction of this Mortgage.

2.10     Further Assurances. To do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer, assurances, and other instruments, including security agreements and financing statements, as the Mortgagee shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring and confirming unto the Mortgagee the property and rights hereby encumbered, credited conveyed, assigned or intended now or hereafter so to be encumbered, created, conveyed, or assigned or which the Mortgagor may now be or may hereafter become bound to encumber, create, convey, assign to the Mortgagee, for the purpose of carrying out the intentions or facilitating the performance of the terms of this Mortgage, and to pay all filing, registration or recording fees, and all taxes incident to the preparation, execution, acknowledgement, delivery and recordation of any of the same.

2.11  <u>Mortgage Lien.</u> All right, title and interest of the Mortgagor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Mortgaged Property hereinabove described, hereinafter acquired by, or released to the Mortgagor, or constructed, assembled or placed by the Mortgagor on the Real Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, from time to time may, either by delivery to Mortgagee or by any instruments (including this Mortgage) be subjected to this Lien and security interest by mortgagor or anyone on behalf of Mortgagor or with Mortgagor's consent and in such case, without further mortgage, conveyance, assignment or other act by the Mortgagor, shall become subject to the lien of and security interest created by this Mortgage  as fully and completely and with the same effect as though now owned by the Mortgagor and specifically described herein, but at all times, the Mortgagor will execute and deliver to the Mortgagee any and such further assurances, mortgages, conveyances or assignments thereof or security interests therein as the Mortgagee may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Mortgage.

2.12  <u>Condemnation.</u> All monetary awards or other monetary compensation heretofore or hereafter to made to the Mortgagor and all subsequent owners of the Mortgaged Property whether such compensation is for any taking by eminent domain, either permanent or temporary, of all part of the said property or any easement or any appurtenances thereto, including severance and consequential damages and change in grade  of any street, are assigned to Mortgagee to the extent of the then existing combined unpaid balance of the Note and any accrued but unpaid interest thereon and, after deducting any expenses of collection, at its option, to apply the net proceeds as a credit upon any portion, as selected by Mortgagee, of the Indebtedness secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the Indebtedness is otherwise adequately secured.  Mortgagor further covenants and agrees to give Mortgagee immediate notice of the actual or threatened commencement of any proceedings.  Mortgagor further covenants and agrees to make, execute and deliver to Mortgagee, at any time or times, upon request, free, clear and discharged of any encumbrance of any kind whatsoever, any and all further assignments and/ or other instruments deemed necessary by Mortgagee for the purpose of validly and sufficiently assigning all such monetary awards and other monetary compensation heretofore or hereafter to be made to Mortgagee (including the assignment of any award from the United States Government at any time after the allowance of the claim therefore, the ascertainment of the amount thereof and the issuance of the warrant for payment thereof).

2.13  <u>Security Interest.</u>      This Mortgage is and shall be deemed to create, grant, give and convey a mortgage of, a lien and encumbrance upon, and a present security interest in both real and personal property, including all improvements, goods, chattels, furniture, furnishings, fixtures, equipment, apparatus, appliances and other items of tangible or intangible personal property, hereinabove particularly or generally described and conveyed, whether now or thereafter affixed to, located upon, necessary for or used or useful, either directly or indirectly, in connection with the operation of the Mortgaged Property, and this Mortgage shall also serve as a "Security Agreement" within the meaning of that term as used in the Uniform Commercial Code as adopted and in force from time to time in the State of Michigan (the "Code"), and shall be operative and effective as a Security Agreement in addition to, and not in substitution for, any other Security

10

Agreement executed by the Mortgagor in connection with the extension of credit or loan transaction secured hereby. The Mortgagor agrees to and shall, upon the request of Mortgagee, execute and deliver to Mortgagee, in form satisfactory to Mortgagee, such "Financing Statements", descriptions of property and such further assurances as Mortgagee, in its sole discretion, may from time to time consider necessary to create, perfect, continue and preserve the lien and encumbrances hereof and here including all buildings, improvements, goods, chattels, furniture, furnishings, fixtures, equipment, apparatus, appliances and other items of tangible and intangible personal property herein specifically or generally described and intended to be the subject of the security interest, lien and encumbrance hereby created, granted and conveyed. The Mortgagee, at the expense of the Mortgagor, may or shall cause such statements, descriptions and assurances and this Mortgage to be recorded and re-recorded, filed and re-filed, at such times and in such places as may be required or permitted by law to so create, perfect and preserve the lien encumbrance hereof upon all of said property. Without limitation, Mortgagee, at its election, upon Mortgagor's default under this Mortgage, will have all rights, powers, privileges and remedies from time to time available to a secured party under the provisions of such Code with respect to such property.

2.14    Expenses.    In the event that any or all of the Indebtedness secured hereby is placed in the hands of an attorney for collection, or in the event that the Mortgagee shall become a party either as plaintiff or as defendant, in any action, suit, appeal or legal proceeding including, without limitation, foreclosure, condemnation, bankruptcy or administrative proceedings or any proceeding wherein proof of indebtedness in relation to the property described with respect to the lien and security interest granted or created hereby or herein, or for the recovery or protection of the Indebtedness or said property, or for the foreclosure of this Mortgage, the Mortgagor shall save and hold the Mortgagee harmless from and against any and all costs and expenses incurred by the Mortgagee on account thereof, including, but not limited to, reasonable attorneys' fees, whether at the trial or appellate level, title searches and abstract and survey charges, and the Mortgagor shall repay, on demand, all such costs and expenses, together with interest thereon at the highest rate allowed by law, all of which sums, if unpaid, shall be added to and become a part of the Indebtedness secured hereby.

2.15    Transfer of Other Assets.    Mortgagor shall not, directly or indirectly, sell, convey, or transfer or permit to be sold, conveyed, or transferred any of its assets to any person or entity to which Mortgagor is related or connected. The term "assets" as used in this Section does not include the Mortgaged Property, the sale, conveyance, or transfer of which is prohibited as provided in Section 5.1 hereof.

2.16    Environmental Contamination/Hazardous Substances. Mortgagor shall not permit or cause the Mortgaged Property to be used for the handling, storage, transportation, or disposal of Hazardous Substances.

2.17    Due on Sale or Further Encumbrance. Except as provided herein, the direct or indirect sale, assignment, or conveyance of the Property, or any interest therein, or the further encumbrance of the Property, without Mortgagee's written consent shall, at Mortgagee's option, constitute a Default under this Mortgage. Transfer of control of any interest in the Mortgagor(s) or a transfer of any interest in the Mortgagor(s) shall be deemed a transfer of the Property.

## ARTICLE III
## EVENTS OF DEFAULT

3.1 <u>Default.</u> An Event of Default, as used in this Mortgage shall occur hereunder if:

(a) <u>Failure to Pay</u>. The Mortgagor fails to pay the Indebtedness or any installment thereof as and when due and payable; or

(b) <u>Failure to Perform.</u>   (i) The Mortgagor shall fail to perform or observe any covenant, condition or agreement of the Mortgagor to be observed or performed under this Mortgage or the Note or the Loan Documents; (ii) default shall be made in the due observance or performance of any covenant, condition or agreement on the part of the Mortgagor or Borrower or any Guarantor to be observed or performed pursuant to the terms of the Loan Documents; or

(c) <u>False Representation</u>. Any representation or warranty of Mortgagor contained in this Mortgage, the Note or in any other Loan Documents proves to be incorrect or misleading in any materially adverse respect as of the time when the same shall have been made, including, without limitation, any environmental warranties and representations made by Mortgagor to Mortgagee as an inducement to Mortgagee's making the loan evidenced by the Note, or pursuant to any provision of this Mortgage; or

(d) <u>Judgment</u>.   If any order, judgment or decree shall be entered upon Application of a creditor of Mortgagor by a court of competent jurisdiction approving a petition seeking appointment of receiver or trustee of all or a substantial part of the Mortgagor's assets and such order, judgment or decree shall continue and not be stayed and in effect for a period of thirty (30) days; or

(e) <u>Appointment of Receiver.</u>   The Mortgagor shall consent to the appointment of a receiver, trustee, or liquidator of all or a substantial part of Mortgagor's assets; or

(f) <u>Voluntary Bankruptcy</u>. The Mortgagor shall be adjudicated a bankrupt or insolvent, or file a voluntary petition in bankruptcy, or admit in writing its inability to pay its debts when they become due; or

(g) <u>Involuntary Bankruptcy</u>. The Mortgagor shall file an answer admitting the material allegation of a petition filed against the Mortgagor in any bankruptcy, reorganization or insolvency proceeding; or

(h) <u>Assignment for Benefit of Creditors</u>. The Mortgagor shall make a general assignment for the benefit or creditors; or

(i) <u>Insolvency</u>. The Mortgagor shall file a petition to or take advantage of any insolvency law; or

(j) <u>Death or Incompetency</u>. If any Guarantor of the Note or any principal officer of the Mortgagor dies or is declared incompetent; or

(k)    <u>Financial Condition</u>.  If a material adverse change has occurred at any time or times subsequent to the date hereof, in the financial condition, results of operations, operations, business, properties or prospects of Mortgagor, or any Guarantor, or any endorser, co-maker, or surety of the Note, such as by way of illustration and not limitation, a downturn in financial performance, the loss of critical licenses, management exodus or a labor strike; or

(l)    <u>Default by Guarantor</u>. If any Guarantor fails to duly pay of perform any covenant, term, provision, or condition of any Guaranty, or fails to duly pay or perform any and all indebtedness, liabilities and obligations (whether joint or several, direct or indirect absolute or contingent, liquidated or unliquidated, matured or unmatured) of any Guarantor to Mortgagee or to any of Mortgagee's affiliated, whether now existing or hereafter created or arising or now owned or howsoever hereafter acquired by Mortgage or by any or Mortgagee's affiliated; or

(m)    <u>Failure to Insure</u>. If Mortgagor fails to carry all required insurance coverage as required by the terms and provisions of this mortgage or fails to notify Mortgagee of any lapse of insurance and deliver to Mortgagee replacement insurance as provided in Section 2.7 of the Mortgage; or

(n)    <u>Transfer of Interest in Mortgaged Property/Transfer of Interest in Mortgagor</u>. If Mortgagor transfers, sells, conveys or otherwise disposes of any interest in the Mortgaged Property without the prior written consent of Mortgagee, or if any interest in any Borrower is sold, transferred, assigned, pledged, or hypothecated without Lender's prior written consent; or

(o)    <u>Subordinate Financing</u>. Mortgagor may permit or cause subordinate mortgages, liens, or encumbrances to be imposed against the Mortgaged Property as long as Mortgagor receives the prior written consent of the Lender whose consent may be unreasonably withheld; or

(p)    <u>Other Events of Default</u>. If Mortgagor is the subject of any occurrence described in Subsections (d) through (k), inclusive of the Article; or

(q)    <u>Cross Default Provision</u>. Mortgagors' Default or breach under the Note or any other note or agreement in which Mortgagee has an interest shall be a breach under the Mortgage and Mortgagee may invoke any of the remedies permitted by the Mortgage.

## ARTICLE IV
## MORTGAGEE'S RIGHTS AND REMEDIES

4.1    <u>Acceleration and Foreclosure</u>. If default be made in the payment of any installment of the Note, whether of principal or interest, or in the payment of any other sums of money referred to therein, or in the Mortgage, promptly and fully within fifteen (15) days after the same shall be due without notice or demand therefore, or in the event a breach or default be made by the Mortgagor in any one of the stipulations, agreements, conditions and covenants of the Note, this Mortgage, or any other Loan Documents, or in the event that each and every one of said stipulations, agreements, conditions and covenants are not otherwise dully, promptly and fully discharged or performed then and upon the occurrence of any one of such events, or upon the

happening of any other event which, according to the terms of this Mortgage, or the Note shall entitle the holder to accelerate the maturity of the Indebtedness evidenced by the Note, the Mortgagee, at its option, may thereupon thereafter declare the Indebtedness evidenced by the Note, as well as all other monies secured hereby, to be forthwith due and payable, whereupon the principal of and the interest accrued on the indebtedness evidenced and represented by the Note, and all other sums secured by the Mortgage shall immediately become due and payable as if all of said sums of money were originally stipulated to be paid on such day, and thereupon, without notice or demand, the Mortgagee may avail itself of all rights and remedies provided by law and may prosecute a suit at law or in equity as if all monies secured hereby had matured prior to its institution, anything in this Mortgage, or in the Note, or in any of the Loan Documents to the contrary notwithstanding. The Mortgagee may foreclose this Mortgage as to the amount so declared due and payable and the Mortgage Property shall be sold according to law to satisfy and pay the same together with all costs, expenses and allowances, including, without limitation, a reasonable fee for the Mortgagee's attorneys. The Mortgaged Property shall be sold according to law to satisfy and pay the same together with all costs, expenses and allowances, including, without limitation, a reasonable fee for the Mortgagee's attorneys. The Mortgaged Property may be sold in one parcel, several parcels or groups of parcels and the Mortgagee shall be entitled to bid at the sale and, if the highest bidder for the Mortgaged Property or any part or parts thereof, shall be entitled to purchase the same. The failure of omission on the part of the Mortgagee to exercise the option for acceleration of maturity and foreclosure of this Mortgage following any default as aforesaid or to exercise any other option granted hereunder to Mortgagee when entitled to do so in any one or more instances, or the acceptance by Mortgagee of partial payment of the Indebtedness secured hereby, whether before or subsequent to Mortgagor's default hereunder, shall not constitute a waiver of any such default or the right to exercise any such option, but such option shall remain continuously in force. Acceleration of maturity, once claimed hereunder by Mortgagee, at the option of Mortgagee, may be rescinded by written acknowledgment to that effect by Mortgagee, both the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

4.2 <u>Possession</u>. At any time after default hereunder, the Mortgagee is authorized, without notice in its sole discretion to enter upon and take possession of the Mortgage Property or any part thereof and to perform any acts which the Mortgagee deems necessary and proper to conserve the security herein intended to be provided by said property, to operate any business or businesses conducted thereon and to collect and receive all rents, issues and profits thereof and therefrom, including those past due as well as those accruing thereafter.

4.3 <u>Receiver</u>. If, any time after a default hereunder, in the opinion of the Mortgagee, a receivership may be necessary to protect the Mortgaged Property, or its rents, issues, revenue, profits or proceeds, whether before or after maturity of the Indebtedness secured hereby and whether before or at the time of or after the institution of suit to collect such Indebtedness, or to enforce this Mortgage, the Mortgagee, as a matter of strict right and regardless of the value of the Mortgaged Property or the amounts due hereunder or secured hereby, or of the solvency of any party bound for the payment of such indebtedness, shall have the right, upon ex parte application, without notice to anyone, and by any court having jurisdiction, in, to the appointment of receiver to take charge of, manage, preserve, protect and operate the Mortgaged Property, to collect the rents, issues, revenues, profits, proceeds and income thereof, to make all necessary and needful

14

repairs, and to pay all taxes, assessments and charges against said property and all premiums for insurance thereon, and to do such other acts as may by such court be authorized and directed, and after payment of the expenses of the receivership and the management of the Mortgaged Property to apply the proceeds of such receivership in reduction of the Indebtedness secured hereby or in such other manner as the court shall direct. Such receivership shall, at the option of Mortgagee, continue until full payment of all sums hereby secured, or until title to the Mortgaged Property shall have passed by sale under this Mortgage. Mortgagor hereby specifically waives its right to object to the appointment of a receiver as aforesaid and hereby expressly agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to the Mortgagee.

4.4     Mortgagee Performance of Mortgagor's Obligations

(a)     Should the Mortgagor fail to make payment of any Taxes or assessments on or with respect to the Mortgaged Property before the same shall become delinquent, or shall fail to make payment of any insurance premiums or other charges, impositions or liens herein or elsewhere required to be paid by the Mortgagor, the Mortgagee, at is option, may make payments of same, and also may redeem the Mortgaged Property from tax sale without any obligation to inquire into the validity of such taxes, assessments and tax sales. In the case of any such payment by Mortgagee, the Mortgagor agrees to reimburse the Mortgagee, upon demand therefore, the amount of such payment with any fees and expenses attendant in making the same, together with interest thereon at the highest rate then allowed by the laws of the State of Michigan, or, if controlling, the laws of the United States; and, until paid, such amounts and interest shall be added to and become part of the debt secured hereby to the extent that this Mortgage secures the repayment of the Indebtedness. Neither the right nor the exercise of the right herein granted unto the Mortgagee to make any such payments as aforesaid shall preclude the Mortgagee from exercising its option to cause the whole Indebtedness secured hereby to become immediately due and payable by reason of the Mortgagor's default in making such payments as hereinabove required.

(b)     The Mortgagee, in making any payment herein and hereby authorized in the place and stead of Mortgagor, relating to Taxes assessments and other governmental or municipal charges, fines, impositions of liens asserted against the Mortgaged Property, may do so according to any bill or statement procured from the appropriate public office without inquiry into the accuracy of the bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof, or relating to any apparent or threatened adverse title, lien, statement of lien, encumbrance, claim or charge. In making payments hereby authorized by the provisions of this section, Mortgagee may do so whenever, in its reasonable judgment and discretion, such advance or advances are necessary or desirable to protect the full security intended to be afforded by this instrument.

4.5     Remedies as to Personal Property. Mortgagee may exercise any or all of its rights and remedies under the Code-Secured Transactions as adopted by the State of Michigan or other applicable law as well as all other rights and remedies possessed by Mortgagee, all of which shall be cumulative. Mortgagee is hereby authorized and empowered to enter the Mortgaged Property or other place where the Personal Property may be located without legal process, and to take possession of the Personal Property without notice or demand, which hereby are waived to the maximum extent permitted by the laws of the State of Michigan. Upon demand by Mortgagee,

15

Mortgagor shall make the Personal Property available to Mortgagee at a place reasonably convenient to Mortgagee. Mortgagee may sell at one of more public or private sales and for such price as Mortgagee may deem commercially reasonable, any and all of the Personal Property secured by the Mortgage, and any other security or property held by Mortgagee and Mortgagee may be the purchaser of any or all of the Personal Property.

4.6     Other. Mortgagee may institute and maintain any suits and proceedings as the Mortgagee may deem advisable (i) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or in violation of this Mortgage; (ii) to preserve or protect its interest in the Mortgaged Property; and (iii) to restrain the enforcement of or compliance with any governmental requirement that may be unconstitutional or otherwise invalid, if the enforcement of compliance with such governmental requirement might impair the security hereunder or be prejudicial to the Mortgagee's interest.

4.7     Remedies Cumulative. The rights and remedies herein provided are cumulative and Mortgagee, as the holder of the Note, and of every other obligation secured hereby, may recover, judgment thereon, issue execution therefore and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby and no enumeration of special rights or powers by any provisions hereof shall be construed to limit any grant of general rights and powers, or to take away or limit any and all rights granted to or vested in Mortgagee by law, and Mortgagor further agrees that no delay or omission of the Mortgagee to exercise any rights or power accruing to it hereunder shall impair any such right or power or shall be construed to be a waiver of any such event of default hereunder or any acquiescence therein; and every right, power and remedy granted herein to the Mortgagee may be exercised from time to time as often as may be deemed expedient by the Mortgagee.

4.8     Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition, seizure of the Mortgage Property by any governmental authority, or other judicial proceedings affecting the Mortgagor, any guarantor, any endorser, co-maker, surety, or guarantor of the Note or any of their respective properties, the Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claim allowed in such proceedings for the entire unpaid Indebtedness at the date of the institution of such proceedings, and for any additional amounts which may become due and payable after such date.

In the event Mortgagors file a Petition for Relief under any Chapter of the United States Bankruptcy Code, Mortgagors agree that Mortgagee shall be entitled to, and Mortgagors hereby consent to immediate relief from the automatic stay imposed by the bankruptcy code to take any and all actions necessary to enforce any rights that Mortgagee may have under, the Note or Mortgage, including but not limited to, the commencement or continuation of a foreclosure of the mortgage, or otherwise compel the specific performance of any obligation of Mortgagors under this agreement.

4.9     Waiver of Redemption, Notice and Marshaling.  Mortgagor hereby waives and releases, for itself and anyone claiming by, through or under it to the maximum extent permitted

16

by the laws of the State of Michigan (a) any right to claim, take or insist upon any benefit or advantage of any present or future stay, extension, or moratorium law that may affect Mortgagor's rights and obligations hereunder; (b) all rights to have the Mortgaged Property and any other security for the Indebtedness marshaled upon any foreclosure or otherwise; (c) unless specifically required herein, all notices of default of Mortgagee's actual exercise of any option of remedy under the Note or the Loan Documents.

## ARTICLE V
## MISCELLANEOUS

5.1    <u>Transfer of Mortgaged Property.</u>    Mortgagor shall not sell, convey, transfer, encumber or otherwise dispose of any interest in the Mortgaged Property, the Rents, the Improvements, Appurtenances, nor shall Mortgagor permit or cause the First Mortgage to be assumed by any other person or entity, without Mortgagee's prior written consent, which consent may be withheld in Mortgagee's sole discretion. Any encumbrance or transfer of any interest of Mortgagor or Borrower in all or any portion of the Mortgaged Property, the Rents, the Improvements or the Appurtenances or any transfer of any ownership interest in Mortgagor or Borrower, or any assumption of the First Mortgage without Mortgagee's prior written consent, whether voluntary or involuntary, or by operation of law, will be void as to Mortgagee, and constitute and immediate default under this Mortgage, without further notice.

5.2    <u>Successors and Assigns.</u> The Mortgagee and its successors have the right to assign this mortgage throughout the term of the loan. The provisions hereof shall be binding upon the Mortgagor and the heirs, devisees, personal representatives, successors and assigns of the Mortgagor, and inure to the benefit of Mortgagee and its successors and assigns. Where more than one Mortgagor is named herein, the obligations and liabilities of said Mortgagors shall be joint and several. The words "Mortgagor" and "Mortgagee" shall be interpreted to mean singular, plural, feminine, masculine or neuter as the context shall require.

5.3    <u>Applicable Law.</u> This instrument is to be governed by and construed in accordance with the laws of the State of Michigan.

5.4    <u>Satisfaction of Mortgage.</u> If the Mortgagor shall: (a) pay in full (i) all of the Indebtedness (as defined herein), including but not limited to all sums (principal, interest and charges) payable under the Note and any and all extensions and renewals of the same; and (ii) all sums becoming due and payable by the Mortgagor under the terms of this Mortgage, including but not limited to advancements made by the Lender pursuant to the terms and conditions of the Mortgage; and (b) have kept and performed each and every obligation, covenant, duty, condition and agreement herein imposed on or agreed to by the Mortgagor; then the lien and security interest created by this Mortgage shall become null and void and the Lender in such case shall, upon the request of the Mortgagor execute and records property instruments acknowledging satisfaction of this instrument; otherwise, this Mortgage shall remain in full force and effect.

5.5    <u>Notices.</u> Any notice of demand that must or may be given or made in connection with this Mortgage must be in writing and, unless receipt is expressly required, will be deemed given, delivered or made, as the case may be, when delivered by personal delivery or when mailed

by Express mail, or by certified or registered mail, return receipt requested in any event, with sufficient postage affixed, and addressed to the parties as follows:

TO MORTGAGOR:   8255 Second Avenue, LLC
                1778 Grant
                Birmingham, MI 48009
                Attn: Mr. Scott Sitner, Manager

TO MORTGAGEE:   B & W Real Property Associates, L.L.C.
                18175 Maryland
                Southfield, MI 48075
                Attn: Martin Weinstock, Owner

Such Addresses may be changed by notice pursuant to this section; but notice of change of address is effective only upon receipt. All of the persons executing this Mortgage as Mortgagor severally agree that a single notice to Mortgagor in the manner provided in this section will be effective to bind each such person for all purposes.

5.6   <u>Maximum Interest Rate</u>.
(a)    Any sums which shall not be paid when due, whether maturing by lapse of time or by reasons of acceleration under provisions of the Note, or this Mortgage, and whether principal, interest or money owing for advancements pursuant to the terms of this Mortgage or any other document or instrument executed as security for the Indebtedness shall bear interest at the highest rate allowed by law.
(b)    Nothing herein contained nor any transaction related thereto shall be construed or so operate as to require the Mortgagor to pay interest at a rate greater than it is now lawful in such case to contract for, or to make any payment or to do any act contrary to law, and the Mortgagee shall reimburse the Mortgagor for any interest paid in excess of the highest rate allowed by law or any other payment which may inadvertently be required to be paid contrary to law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Mortgage, the Note, or other Indebtedness secured hereby in whole or in part, the such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this Mortgage shall remain operative and in full force and effect.

5.7   <u>Survival of Representation, Warranties and Covenants</u>. The warranties, representations, covenants and agreements set forth in this Mortgage shall survive the making of the loan and the execution and delivery of the Note shall continue in full force and effect until all of the Indebtedness shall have been paid and performed in full.

5.8   <u>Waiver, Delay or Omission</u>. No waiver of any Default hereunder shall extend to or affect any subsequent or any other Default then existing, or impair any rights, powers or remedies consequent thereon, and no delay on omission of Mortgagee to exercise any right, power or remedy shall be construed to waive any such Default or to constitute acquiescence therein.

5.9   <u>Invalidity</u>. If any one of more of the provisions contained in this Mortgage, the Note or any other Loan Documents is declared or found by a court of competent jurisdiction to be

invalid, illegal, or unenforceable, such provision or portion thereof shall be deemed stricken and severed and the remaining provisions hereof shall continue in full force and effect.

5.10    Modification. No agreement unless in writing signed by Mortgagee and no course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge, or release in whole or in part any provision of this Mortgage. No waiver of any rights or powers or Mortgagee or consent by it shall be valid unless in writing signed by an authorized officer of Mortgagee and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

5.11    Joint and Several Liabilities. If more than one person or entity executes this Mortgage, each is and shall be jointly and severally liable hereunder.

5.12    Prepayment Penalty, Origination, Exit, Extension, Broker, Consulting, Document Preparation or Other Fees. This Mortgage secures payment of any Prepayment Penalty, Extension, Exit, Origination, Broker, Consulting, Document Preparation or any other fee or fees (the "Fees") due under the Note, which must be paid off with the debt owed secured by this Mortgage or the lien of this Mortgage and cannot be discharged until all Fees have been paid.

5.13    Waiver of Trial by Jury. BY THE EXECUTION HEREOF, MORTGAGOR KNOWINGLY, VOLUNTARILY AND INTENTIONALLY HEREBY AGREES, THAT:

(A)    NEITHER THE MORTGAGOR, NOR ANY ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF THE SAME SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE ARISING FROM OR BASED UPON THIS MORTGAGE, THE NOTE, ANY GUARANTY, OR ANY OF THE LOAN DOCUMENTS EVIDENCING, SECURING, OR RELATING TO THE INDEBTEDNESS WHICH IS SECURED HEREBY, OR THE DEALINGS OR RELATIONSHIP BETWEEN OR AMONG THE PARTIES THERETO;

(B)    NEITHER THE MORTGAGOR NOR MORTGAGEE WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN OR CANNOT BE WAIVED.

(C)    THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS;

(D)    NEITHER THE MORTGAGOR, NOR MORTGAGEE HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES; AND

(E)    THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE.

Mortgagor, IN WITNESS WHEREOF, has signed and sealed this instrument as of the day and year first above written.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT - OR THE PRINCIPAL BALANCE DUE UPON MATURITY - IS $110,000.00, TOGETHER WITH ACCRUED INTEREST AND EXIT FEE, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE PLUS THE EXIT FEE DUE UNDER THE NOTE.**

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT FORECLOSURE JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO ENTER A FORECLOSURE JUDGMENT BY JUDICIAL FORECLOSURE AND COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH THIS AGREEMENT, OR ANY OTHER CAUSE.**

**MORTGAGOR**

8255 Second Avenue, LLC, a Michigan limited liability company
By: _____
      Scott Sitner
Its:    Manager

STATE OF MICHIGAN   )
                    ) ss.
COUNTY OF OAKLAND  )

The foregoing instrument was acknowledged this _31_ day of January 2025, Scott Sitner, as Manager on behalf of 8255 Second Avenue, LLC, a Michigan limited liability company, as his free act and deed, who is personally known to me or who produced a Driver's License or United States Passport as identification.

| SHLOMO WEITZ |
| Notary Public, State of Michigan |
| County of Oakland |
| My Commission Expires Dec. 02, 2030 |
| Acting in the County of _Oakland_ |

_____
Notary Public_____(Printed Name)
Oakland County, Michigan
My Commission Expires: _____

Prepared by and, when recorded, return to: David Weinstock at 18175 Maryland, Southfield, MI 48075.

# EXHIBIT A
## LEGAL DESCRIPTION

Land situated in the City of Detroit, County of Wayne, State of Michigan, to wit:

Lots 77 and 78, The Peerless Add. Sub. No. 2, according to the plat thereof, as recorded Liber 18 Page 39, Wayne County Records.

Parcel ID: 04/001866-7

C/K/A: 8255 Second Avenue, Detroit, MI 48202

# EXHIBIT M

2025205418   L: 59646 P: 1057   MTG
07/08/2025 11:40:05 AM Total Pages: 22
Bernard J. Youngblood, Register of Deeds - Wayne County, MI
ELECTRONICALLY RECORDED

**THIS IS A MORTGAGE WHICH SECURES A BALLOON PROMISSORY NOTE AND THE FINAL PRINCIPAL PAYMENT OF - OR THE INITIAL PRINCIPAL BALANCE DUE UPON MATURITY IS - $155,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, EXIT FEE AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

## COGNOVIT MORTGAGE AND SECURITY AGREEMENT
### Future Advances

**Notice: This Cognovit Mortgage secures all future advances from Lender to Mortgagor, as defined below; however, in no event shall the principal amount secured at any one time exceed the sum of $155,000.00 (One Hundred Fifty Five Thousand and 00/100 Dollars).**

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH THIS AGREEMENT, OR ANY OTHER CAUSE.**

THIS COGNOVIT MORTGAGE AND SECURITY AGREEMENT (hereinafter, the "Mortgage") made and executed this 3ʳᴰ day of July 2025, by 8255 Second Avenue, LLC, a Michigan limited liability company ("Mortgagor"), whose mailing address 1778 Grant, Birmingham, MI 48009, to and in favor of B & W Real Property Associates, L.L.C., whose address is 18175 Maryland, Southfield, MI 48075 (hereinafter referred to as "Mortgagee" or "Lender"), and secured party.

## RECITALS:

WHEREAS, Mortgagor is the fee simple owner of real property located at 8255 Second Avenue, Detroit, MI 48202 and seeks financing for business purposes in the amount of **One Hundred Fifty Five Thousand and 00/100 Dollars ($155,000.00)** (the "Loan"), unconditionally guaranteed ("Guaranty") by Scott Sitner ("Guarantor"), pursuant to the terms of a certain Guaranty of Payment and Performance Agreement (the "Agreement") and Cognovit Balloon Promissory Mortgage Note, both of even date herewith, and both incorporated herein by reference and as the same may be amended, modified, supplemented, extended, substituted and restated from time to time (collectively, the "Note"); and

WHEREAS, the total indebtedness to be secured by this Mortgage is **One Hundred Fifty Five Thousand and 00/100 Dollars ($155,000.00),** plus any applicable pre-payment fee,

1

accrued interest, costs and other fees, if any, and all other charges and expenses secured herein to the Property described above and below and specifically in the Note; and

WHEREAS, the execution and delivery of this Mortgage is a condition precedent to Mortgagee's obligation to extend the Loan to Borrower.

## **WITNESSETH:**

WHEREAS, the Mortgagor is justly indebted to Mortgagee for the Loan pursuant to the Note, and this Mortgage is given to secure and shall secure the following (hereinafter referred to collectively as the "Indebtedness"):

a)       the payment of any sums and all sums, principal, interest and agreed charges, becoming due and payable by the Mortgagor under or with respect to the Note, of even date herewith, in the original principal amount of **$155,000.00**, executed by the Borrower in favor of the Mortgagee; and

b)       the payment of any and all sums now or hereafter becoming due and payable by the Mortgagor to the Lender under the terms of this Mortgage, including, but not limited to, advances made by the Lender pursuant to the terms and conditions of the Note and this Mortgage; and

c)       the payment of all renewals and extensions of any or all obligations of the Mortgagor described in (a) and (b), above, whether or not any renewal or extension agreement is executed in connection therewith; and

d)       the full and complete performance of each and every obligation, covenant, duty and agreement of the Mortgagor contained in this Mortgage.

WHEREAS, the Mortgagee, as a condition precedent to the extension of credit or the making of the Loan evidenced by the Note has required that the Mortgagor provide Mortgagee with security for the payment or repayment of the Indebtedness represented by the Note as well as for the performance, observance and discharge by the Mortgagor of the various covenants, stipulations and agreements made by the Mortgagor to, with, in favor and for the benefit of Mortgagee with respect to the Indebtedness and such security.  The Note and this Mortgage and any other document or instrument executed and delivered by Mortgagor to and in favor of Mortgagee as security for or evidence of the Loan, are hereinafter referred to collectively as the ("Loan Documents").

**NOW, THEREFORE**, in consideration and in order to secure the payment or repayment of the indebtedness evidenced and represented by the Note, together with interest on the Indebtedness, as well as the payment of all other sums of money secured hereby, as hereinafter provided, and also to secure the observance performance and discharge by the Mortgagor of all covenants, stipulations and agreement set forth in the Note, this Mortgage and in all other Loan Documents and in order to charge the properties, interests and  rights hereinafter described with such payment, observance, performance and discharge, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor does hereby grant, bargain, sell, alien, remise, release, convey, assign, transfer, pledge, deliver, set over, hypothecate, warrant and confirm unto Mortgagee, its successors and assigns forever, the following described properties, rights and interests (all of which are hereinafter referred to as the "Mortgaged Property"), to wit:

ALL THAT certain pieces, parcels or tracts of land or real property owned by the Mortgagor located at and previously defined above as 8255 Second Avenue, Detroit, MI 48202 (hereinafter collectively referred to as the "Real Property" or "Property") of which the Mortgagor is now seized and in actual or constructive possession, legally described as follows:

### See Attached Legal Description in Exhibit A

TOGETHER WITH all buildings, structures and other improvements of any kind, nature, or description (hereinafter sometimes together referred to as the "Improvements") now or hereafter erected, constructed, placed or located upon said Real Property, including, without limitation, any and all, additions to substitutions for or replacements of such Improvements;

TOGETHER WITH all and singular, the tenements hereditaments, strips and gores, rights-of-way, easements, privileges and other appurtenances now or hereafter belonging or in any way appertaining to the Real Property including, without limitation, all right, title, interest of the Mortgagor in any after acquired right, title, interest, remainder or reversion, in and to the beds of any ways, streets, avenues, roads, alleys, passages and public places, pen or proposed, in front of, running through, adjoining or adjacent to said Real Property (hereinafter, "Appurtenances");

TOGETHER WITH any and all lease, rents, royalties, issues, revenues, profits, proceeds, income and other benefits, including accounts receivable, of, accruing to or derived from the Real Property, Improvements and Appurtenances (hereinafter sometimes together referred to as "Rents");

AS WELL AS all fixtures, goods, chattels, construction, materials, furniture, furnishings, equipment, machinery, apparatus, appliances, and other items of personal property, whether tangible or intangible, of any kind, nature or description, whether now owned or hereafter acquired by the Mortgagor, which is, are or shall hereafter be located upon, attached, affixed to or used, either directly or indirectly, in connection with the complete and comfortable use, occupancy and operation of said Real Property and Improvements, including, without limitation, any and all licenses, any and all licenses, permits or franchises, used or required in connection with such use, occupancy or operation, together with any and all additions, replacements or substitutions thereto, thereof, or therefore as well as proceeds thereof or therefrom regardless of form (hereinafter referred to as "Fixtures and Personal Property"). The Mortgagor hereby expressly grants to Mortgagee a present security interest in and lien and encumbrance upon said Fixtures and Personal Property;

TO HAVE AND TO HOLD all of the same unto the Mortgagee and its successors and assigns in fee simple forever;

### ARTICLE I
### REPRESENTATIONS AND WARRANTIES

Mortgagor hereby represents and warrants to Mortgagee that:

1.1    <u>Validity of Loan Documents.</u> (i) The execution, delivery and performance by Mortgagor of the Loan Documents, and the borrowing evidenced by the Note, will not violate any governmental requirement, or any indenture,  agreement or other instrument to which Mortgagor is a party or by which it or any of its property is bound, or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated by the provisions  of the Loan Documents ; and (ii) the Loan Documents constitute the legal, valid and binding obligations of Mortgagor and other obligors named therein, if any, in accordance with their respective terms.

1.2    <u>Other Agreements</u>.    Mortgagor is not a party to any agreement or instrument materially and adversely affecting it or its present or proposed businesses, properties or assets, operation or condition, financial or otherwise, and Mortgagor is not in default in the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument to which it is a party.

1.3    <u>Other Information</u>.    All other information, including reports, certificates, papers, data and otherwise given and to be given to Mortgagee with respect (i) to Mortgagor (ii) to the Loan and (iii) to others obligated under the terms of the Loan Documents, are true, accurate and correct in all material respects and complete.

1.4    <u>Title.</u>

(a)    Mortgagor hereby represents and warrants that Mortgagor is indefeasibly seized of the Mortgaged Property and has good right, full power, and lawful authority to convey and encumber all of the same aforesaid; Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same and the validity and priority of the lien and encumbrance of this Mortgage against the lawful claims of all persons whomsoever; and the Mortgaged Property is free and clear of all liens and encumbrances of any kind, nature or description; save and except any (with respect to said Real Property, Improvements and Appurtenances) real property taxes for years subsequent to January 1, 2025.

(b)    PROVIDED ALWAYS, however, that if the Mortgagor shall pay unto the Mortgagee the indebtedness evidenced and represented by the Note and if the Mortgagor shall duly, promptly and fully perform, discharge, execute, effect, complete and comply with and abide by each and every one of the stipulations, agreements, conditions and covenants of the Note, this Mortgage  and all other Loan Documents, then this Mortgage and the estates and interest hereby granted and created shall cease, terminate and be null and void;

1.5    <u>Hazardous Substances.</u>

(a)    To Mortgagor's knowledge and belief, the Mortgaged Property is not now nor has it been, in violation of any applicable federal, state or local law, statute, ordinance, code, rule or regulation, including but not limited to, any Environmental Law; the Mortgaged Property is free of Hazardous Substances; and there are not pending investigations, claims or threats of claims

with respect to the Mortgaged Property by any governmental authority or other person relating to any Environmental Law.

(b)     As used in this Mortgage "Hazardous Substances" shall mean and include all pollutants, containment, toxic or hazardous wastes, and other substances (including, without limitation, asbestos and urea formaldehyde foam insulation), the removal of which is required or the manufacture, use, maintenance or handling of which is regulated, restricted, prohibited or penalized by an Environmental Law, or even though not so regulated, restricted, prohibited or penalized, might pose a hazard to the health and safety of the occupants of the property on which it is located or the occupants of the property/adjacent thereto. Environmental Law" shall mean and include any federal, state or local law or ordinance relating to pollution or protection of the environment including any relating Hazardous Substances, and any and all regulations, codes, plans, orders, decrees, judgments, injunctions, notices and demand letters issued, entered, promulgated or approved thereunder.

1.6     Litigation. There are no judgments outstanding against Mortgagor and there is no action, suit, proceeding, or investigation now pending (or to the best of Mortgagor's knowledge after diligent inquiry, threatened) against, involving or affecting Mortgagor, or the Mortgaged Property, or any part thereof, at law, in equity or before any governmental authority that if adversary determined as to the Mortgaged Property, or as to the Mortgagor would result in a material adverse change in the business or financial condition of the Mortgagor, or Mortgagor's ownership of the Mortgaged Property, nor is there any basis for such action, suit, proceeding or investigation.

1.7     No violations. Mortgagor has not violated any governmental requirement, covenant, condition, restriction, easement or similar matter affecting the Mortgaged Property or Improvements, and Mortgagor has not received any notice of violation from any governmental authority or any other person with respect to any of the foregoing matters.

1.8     Taxes. Mortgagor knows of no federal, state, county and municipal income tax returns required to have been filed by it, which through Mortgagor's failure to file could result in a lien against the Mortgaged Property or any pending claim of assessment, which may involve any charge being levied or assessed, or which may result in the creation of any lien upon the Mortgaged Property.

1.9     No Default. No default or event of Default exists under any of the Loan Documents; and no event has occurred and is continuing which, with notice or the lapse of time, or both, would constitute a default under any provision thereof.

1.10    Fictitious Name Statute.     Mortgagor, if applicable, has duly complied with all of the requirements of applicable Fictitious Name Statute, if any.

1.11    Condition of Mortgaged Property.     The Mortgaged Property or any part thereof, nor existing, is not damaged or injured as a result of any fire, explosion, accident, flood, or other casualty.  The Improvements, if any, as of the date of this Mortgage, are free and clear of any defects in material, structure and construction and do not violate any governmental requirements. To the best of Mortgagor's knowledge there is no existing, proposed or contemplated plan to

modify or realign any street or highway or any existing, proposed or contemplated eminent domain proceeding that would result in the taking of all or any part of the Mortgaged Property or that would adversely affect the use or the operation of the Mortgaged Property.

1.12    <u>Zoning.</u>   The Real Property is zoned so as to permit the Real Property and Improvements to be used for their intended purpose.

1.13    <u>Reliance on Representations</u>. The Mortgagor acknowledges that the Mortgagee has relied upon the Mortgagor's representations, has made no independent investigation of the truth thereof, is not charged with any knowledge contrary thereto that may be received by an examination of the public records and the county(s) wherein the Real Property is located, or that may have been received by an agent of the Mortgagee.

## ARTICLE II
## <u>COVENANTS OF MORTGAGORS</u>

The Mortgagor, for the benefit of the Mortgagee, and its successors and assigns, does hereby expressly covenant and agree:

2.1    <u>Payment.</u>     To pay the principal of the Indebtedness evidenced and represented by the Note, together with all interest thereon, in accordance with the terms of the Note, promptly at the time, at the place, and in the manner that said principal and interest shall respectively become due, and to promptly and punctually pay all other sums required to be paid by the Mortgagor pursuant to the terms of the Mortgage.

2.2    <u>Performance.</u>  To perform, comply with and abide by each and every one of the covenants, stipulations, agreements and conditions and set forth in said Note, this Mortgage and any and all Loan Documents.

2.3    <u>Maintenance of Property.</u>     To keep all Improvements now existing or hereafter erected on the Real Property in good order and repair (normal wear and tear expected) and not to do or permit waste thereof or thereon, nor to alter, remove or demolish any of said improvements or any Fixtures or Personal Property attached or appertaining thereto without the prior written consent of the Mortgagee, not to be or permit any other act whereby the Mortgaged Property shall become less valuable, to be used for purposes contrary to applicable law, or to be used in any manner which will increase the premium for or result in a termination or cancellation of the insurance hereinafter required to be kept and maintained on the Mortgaged Property. In furtherance of, and not be away of limitation upon, the foregoing covenant, Mortgagor shall effect such repairs as the Mortgagee may reasonably require, and from time to time make all needful and proper replacements so that said Improvements, appurtenances, Fixtures and Personal Property will, at all times, be in good condition, fit and proper for the respective purposes for which they were originally erected or installed, Mortgagee, or its agents, shall have the right and shall be permitted, but shall not be required, at all reasonable times, and upon reasonable prior notice thereof, to enter upon and inspect the Mortgaged Property to insure compliance with the foregoing covenants and any and all other covenants, stipulations, agreements and conditions set forth in this Mortgage.

2.4    <u>Payment of Taxes</u>.

(a)    In the event Mortgagee does not escrow funds for and pay taxes (as hereinafter defined) Mortgagor shall pay all and singular such taxes, assessments and public charges as are already levied or assessed or that that may be hereafter levied or assessed upon or against the Mortgaged Property, (collectively the "Taxes") when the same shall be become due and payable according to law, before they become delinquent, and before any interest or penalty shall attach thereto, and will deliver official receipts evidencing the payments of the same to the Mortgagee not later than thirty (30) days following the payment of the same, with the exception of ad valorem Taxes which shall be paid no later than November 30 of the year in which such Taxes are assessed and notice of such payment shall be delivered to Mortgagee no later than December 31 of that year.

(b)    Notwithstanding anything to the contrary in the foregoing Section 2.4 (a) if required by Mortgagee, Mortgagor shall pay on the payment date of installments of principal and interest as provided in the Note, together with and in addition to such installments of principal and interest, an installment of the Taxes in an amount sufficient, as estimated by Mortgagee, to accumulate the sum required to pay such taxes, as applicable, thirty (30) days prior to the due date thereof. Amounts held hereunder shall be the Mortgagee's, and no interest shall be payable with respect thereto. Upon demand of Mortgage, Mortgagor shall deliver to Mortgagee, within ten (10) days after such demand, such additional money as is necessary to make up any deficiencies in the amount necessary to enable Mortgagee to pay such Taxes when due. In case of any Event of Default, Mortgagee may apply any amount under this Section remaining to Mortgagor's credit to the reduction of the Indebtedness, at such times and in such manner as Mortgagee shall determine.

2.5    <u>Discharge of Liens.</u>    To immediately pay or discharge from time to time when the same shall become due all lawful claims and demands of mechanics, materialmen, laborers, and others, which, if unpaid, might result in, or permit the creation of, a lien, or encumbrance upon the Mortgaged Property or any part thereof, or on the rents, issues, income, revenues, profits and proceeds arising therefrom, and in general, to do cause to be done everything necessary so that the lien of this Mortgage shall be fully preserved at the cost of the Mortgagor, without expense to the Mortgagee.

2.6    <u>No Subordinate Financing.</u>    To not permit or cause any subordinate mortgages, liens or other encumbrances to be imposed against the Mortgage property while there remains any outstanding principal balance of this Mortgage. In the event any mortgage, lien or other encumbrance attached to the Mortgaged Property and is not removed within thirty (30) days of its attaching to said Mortgaged Property, the Mortgagee, or its assigns, may accelerate the outstanding principal balance and all accrued but unpaid interest thereon and exercise all default remedies under this Mortgage and available at law and in equity. The Mortgagee, at its sole, absolute and unfettered discretion, shall be entitled to accelerate the maturity of the Indebtedness secured hereby and exercise any and all remedies provided and available to Mortgagee hereunder, in the event that the holder of any secondary or junior lien or encumbrance on the Mortgaged Property shall, through foreclosure or other proceedings, acquire title to the Mortgaged Property.

2.7   <u>Insurance.</u>

(a)   To continuously keep the Improvements and the Fixtures and Personal Property now or hereafter existing, erected, installed and located in or upon the Real Property insured against loss or damage by or abatement of rental or other income resulting from flood, fire, windstorm, extended coverage and such other hazards, casualties and contingencies and perils as may be reasonably required by Mortgagee and in an amount which is equal to the full insurable value of the Mortgaged Property during the term hereof.  All such insurance shall be carried with such company or companies as may be reasonably acceptable to the Mortgagee and the original policy or policies and renewals thereof, (or at the option of the Mortgagee, duplicate originals or certified copies thereof) together with receipts evidence of payment of the premium therefore shall be deposited with, held by and are hereby assigned to Mortgagee as additional security for the deposit therewith, held by and are hereby assigned to Mortgagee as additional security for the indebtedness secured hereby.  Each such policy of insurance shall contain a non-contributing loss payable clause in favor of and in form acceptable to Mortgagee and shall provide for not less than thirty (30) days prior written notice of modifications, cancellation, termination or expiration to Mortgagee. In the event of loss by reason of the hazards, casualties, contingencies and perils for which insurance has been required by the Mortgagee, the Mortgagor and the Mortgagee, at its potion, may make proof of loss if not made promptly by the Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Mortgagee, instead of to the Mortgagor and Mortgagee jointly, and the Mortgagor hereby authorizes Mortgagee to adjust and compromise any losses for which insurance proceeds are payable under any of the aforesaid insurance policies and, after deducting the costs of collection, payable under any of the aforesaid insurance policies and, after deducting the costs of collection, to apply the proceeds of such insurance, at its option, as follows, to wit: (a) first, to the restoration or repair of the insured Improvements, Fixtures, and Personal Property provided that, in the reasonable opinion of the Mortgagee, such restoration or repair is reasonably practical and, provided further, that in the reasonable opinion of the Mortgagee, either: (I) the insurance proceeds collected are sufficient to cover the costs of such restoration or repairs of damage or destruction with respect to which such proceeds were paid, or (ii) the insurance proceeds of collected are not sufficient in themselves to cover the costs of such restoration or repair, but are sufficient therefore when taken together with funds provided and  are available by the Mortgagor from other sources; in which event the Mortgagee shall make such insurance proceeds available to the Mortgagor for the purpose of effecting such restoration or repairs; but Mortgagee shall not be obligated to see to the proper application of such insurance proceeds nor shall the amount of funds so released or used to be deemed to be payment of or on account of the Indebtedness secured hereby, and (b) second, to the reduction of the Indebtedness secured hereby as a credit account thereof in inverse order of maturity in the event that such insurance proceeds are not, in the reasonable opinion of the Mortgagee, sufficient to cover the costs of such restoration repairs, and  the Mortgagor does not provide and make available sufficient funds from other sources to make up the deficiency between the amount of insurance proceeds and the estimated costs of such restoration and repairs.  None of such actions taken by the Mortgagee shall be deemed to be or result in a waiver or impairment of any equity, lien, or right of the Mortgagee under this Mortgagee under this Mortgage or other transfer of title of the Mortgaged Property in extinguishment of the Indebtedness secured hereby, all right, title and interest of the Mortgagor

in any to any insurance policies then in force and insurance proceeds then payable shall pass to the purchaser or grantee.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, any proceeds payable to the Mortgagor are hereby assigned and shall be paid to Mortgagee for application to the sums secured by the Mortgage with any excess paid to the Mortgagor.

2.8    Compliance with Laws.

(a)    To observe, abide by and comply with all statutes, ordinances, orders, requirements or decrees relating to the Mortgaged Property enacted, promulgated or issued by any federal, state or municipal authority or any agency or subdivision thereof, and to observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits, (including, but not limited to, zoning variances, special exceptions and non-confirming uses), privileges, franchises and concessions which are applicable to the Mortgaged Property or which  have been granted to or contracted for or by Mortgagor in connection with any existing, presently contemplated or future use of the Mortgaged Property.

2.9    Indemnification.

(a)    Mortgagor shall at its own expense, and does hereby agree to, protect, indemnify, defend and hold Mortgagee and its attorneys harmless from and against any and all liability, loss, expense, suits, proceedings, claims, demands, or damages of any kind or nature (including attorneys' fees and expenses paid or incurred in connection therewith) arising out of or by reason of (i) an  incorrect legal description of the Real Property, (ii) any action, or inaction of Mortgagee in connection with the Note, this Mortgage, or any other Loan Documents, (iii) the constructions of the Improvements, (iv) the use and operation of the Mortgaged Property, or (v) the presence on or under, or he escape, seepage, leakage, spillage, discharge, emission, or release from the Mortgage Property (or any part thereof) of any Hazardous Substance (including, without limitation, any limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorney's fees, costs of any settlement or judgment or claims asserted, or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any so-called federal, state or local "Superfund" or "Super lien" laws, statutes, ordinances, codes, rules, regulations, orders or decrees regulating, with respect to, or imposing liability, including strict liability, in connection with any Hazardous Substance of standards of conduct concerning any Hazardous Substance), regardless of whether within the control of Mortgagee, so long as the act or omission in question occurs subsequent to Mortgagor's possession of the Mortgaged Property and prior to the sale of the Mortgaged Property and complete dispossession of the Mortgagor therefrom.

(b)    The indemnifications of this paragraph shall survive the full payment and performance of the Indebtedness and the satisfaction of this Mortgage.

2.10    Further Assurances. To do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer, assurances, and other instruments, including security agreements and financing statements, as the

Mortgagee shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring and confirming unto the Mortgagee the property and rights hereby encumbered, credited conveyed, assigned or intended now or hereafter so to be encumbered, created, conveyed, or assigned or which the Mortgagor may now be or may hereafter become bound to encumber, create, convey, assign to the Mortgagee, for the purpose of carrying out the intentions or facilitating the performance of the terms of this Mortgage, and to pay all filing, registration or recording fees, and all taxes incident to the preparation, execution, acknowledgement, delivery and recordation of any of the same.

2.11   <u>Mortgage Lien.</u> All right, title and interest of the Mortgagor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Mortgaged Property hereinabove described, hereinafter acquired by, or released to the Mortgagor, or constructed, assembled or placed by the Mortgagor on the Real Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, from time to time may, either by delivery to Mortgagee or by any instruments (including this Mortgage) be subjected to this Lien and security interest by mortgagor or anyone on behalf of Mortgagor or with Mortgagor's consent and in such case, without further mortgage, conveyance, assignment or other act by the Mortgagor, shall become subject to the lien of and security interest created by this Mortgage  as fully and completely and with the same effect as though now owned by the Mortgagor and specifically described herein, but at all times, the Mortgagor will execute and deliver to the Mortgagee any and such further assurances, mortgages, conveyances or assignments thereof or security interests therein as the Mortgagee may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Mortgage.

2.12   <u>Condemnation.</u> All monetary awards or other monetary compensation heretofore or hereafter to made to the Mortgagor and all subsequent owners of the Mortgaged Property whether such compensation is for any taking by eminent domain, either permanent or temporary, of all part of the said property or any easement or any appurtenances thereto, including severance and consequential damages and change in grade  of any street, are assigned to Mortgagee to the extent of the then existing combined unpaid balance of the Note and any accrued but unpaid interest thereon and, after deducting any expenses of collection, at its option, to apply the net proceeds as a credit upon any portion, as selected by Mortgagee, of the Indebtedness secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the Indebtedness is otherwise adequately secured.  Mortgagor further covenants and agrees to give Mortgagee immediate notice of the actual or threatened commencement of any proceedings.   Mortgagor further covenants and agrees to make, execute and deliver to Mortgagee, at any time or times, upon request, free, clear and discharged of any encumbrance of any kind whatsoever, any and all further assignments and/ or other instruments deemed necessary by Mortgagee for the purpose of validly and sufficiently assigning all such monetary awards and other monetary compensation heretofore or hereafter to be made to Mortgagee (including the assignment of any award from the United States Government at any time after the allowance of the claim therefore, the ascertainment of the amount thereof and the issuance of the warrant for payment thereof).

2.13    Security Interest.    This Mortgage is and shall be deemed to create, grant, give and convey a mortgage of, a lien and encumbrance upon, and a present security interest in both real and personal property, including all improvements, goods, chattels, furniture, furnishings, fixtures, equipment, apparatus, appliances and other items of tangible or intangible personal property, hereinabove particularly or generally described and conveyed, whether now or thereafter affixed to, located upon, necessary for or used or useful, either directly or indirectly, in connection with the operation of the Mortgaged Property, and this Mortgage shall also serve as a "Security Agreement" within the meaning of that term as used in the Uniform Commercial Code as adopted and in force from time to time in the State of Michigan (the "Code"), and shall be operative and effective as a Security Agreement in addition to, and not in substitution for, any other Security Agreement executed by the Mortgagor in connection with the extension of credit or loan transaction secured hereby. The Mortgagor agrees to and shall, upon the request of Mortgagee, execute and deliver to Mortgagee, in form satisfactory to Mortgagee, such "Financing Statements", descriptions of property and such further assurances as Mortgagee, in its sole discretion, may from time to time consider necessary to create, perfect, continue and preserve the lien and encumbrances hereof and here including all buildings, improvements, goods, chattels, furniture, furnishings, fixtures, equipment, apparatus, appliances and other items of tangible and intangible personal property herein specifically or generally described and intended to be the subject of the security interest, lien and encumbrance hereby created, granted and conveyed. The Mortgagee, at the expense of the Mortgagor, may or shall cause such statements, descriptions and assurances and this Mortgage to be recorded and re-recorded, filed and re-filed, at such times and in such places as may be required or permitted by law to so create, perfect and preserve the lien encumbrance hereof upon all of said property. Without limitation, Mortgagee, at its election, upon Mortgagor's default under this Mortgage, will have all rights, powers, privileges and remedies from time to time available to a secured party under the provisions of such Code with respect to such property.

2.14    Expenses.    In the event that any or all of the Indebtedness secured hereby is placed in the hands of an attorney for collection, or in the event that the Mortgagee shall become a party either as plaintiff or as defendant, in any action, suit, appeal or legal proceeding including, without limitation, foreclosure, condemnation, bankruptcy or administrative proceedings or any proceeding wherein proof of indebtedness in relation to the property described with respect to the lien and security interest granted or created hereby or herein, or for the recovery or protection of the Indebtedness or said property, or for the foreclosure of this Mortgage, the Mortgagor shall save and hold the Mortgagee harmless from and against any and all costs and expenses incurred by the Mortgagee on account thereof, including, but not limited to, reasonable attorneys' fees, whether at the trial or appellate level, title searches and abstract and survey charges, and the Mortgagor shall repay, on demand, all such costs and expenses, together with interest thereon at the highest rate allowed by law, all of which sums, if unpaid, shall be added to and become a part of the Indebtedness secured hereby.

2.15    Transfer of Other Assets.    Mortgagor shall not, directly or indirectly, sell, convey, or transfer or permit to be sold, conveyed, or transferred any of its assets to any person or entity to which Mortgagor is related or connected. The term "assets" as used in this Section does not include the Mortgaged Property, the sale, conveyance, or transfer of which is prohibited as provided in Section 5.1 hereof.

2.16   <u>Environmental Contamination/Hazardous Substances.</u> Mortgagor shall not permit or cause the Mortgaged Property to be used for the handling, storage, transportation, or disposal of Hazardous Substances.

2.17   <u>Due on Sale or Further Encumbrance.</u> Except as provided herein, the direct or indirect sale, assignment, or conveyance of the Property, or any interest therein, or the further encumbrance of the Property, without Mortgagee's written consent shall, at Mortgagee's option, constitute a Default under this Mortgage. Transfer of control of any interest in the Mortgagor(s) or a transfer of any interest in the Mortgagor(s) shall be deemed a transfer of the Property.

## ARTICLE III
## EVENTS OF DEFAULT

3.1   <u>Default.</u> An Event of Default, as used in this Mortgage shall occur hereunder if:

(a)   <u>Failure to Pay</u>. The Mortgagor fails to pay the Indebtedness or any installment thereof as and when due and payable; or

(b)   <u>Failure to Perform.</u>   (i) The Mortgagor shall fail to perform or observe any covenant, condition or agreement of the Mortgagor to be observed or performed under this Mortgage or the Note or the Loan Documents; (ii) default shall be made in the due observance or performance of any covenant, condition or agreement on the part of the Mortgagor or Borrower or any Guarantor to be observed or performed pursuant to the terms of the Loan Documents; or

(c)   <u>False Representation</u>. Any representation or warranty of Mortgagor contained in this Mortgage, the Note or in any other Loan Documents proves to be incorrect or misleading in any materially adverse respect as of the time when the same shall have been made, including, without limitation, any environmental warranties and representations made by Mortgagor to Mortgagee as an inducement to Mortgagee's making the loan evidenced by the Note, or pursuant to any provision of this Mortgage; or

(d)   <u>Judgment</u>.     If any order, judgment or decree shall be entered upon Application of a creditor of Mortgagor by a court of competent jurisdiction approving a petition seeking appointment of receiver or trustee of all or a substantial part of the Mortgagor's assets and such order, judgment or decree shall continue and not be stayed and in effect for a period of thirty (30) days; or

(e)   <u>Appointment of Receiver.</u>     The Mortgagor shall consent to the appointment of a receiver, trustee, or liquidator of all or a substantial part of Mortgagor's assets; or

(f)   <u>Voluntary Bankruptcy</u>. The Mortgagor shall be adjudicated a bankrupt or insolvent, or file a voluntary petition in bankruptcy, or admit in writing its inability to pay its debts when they become due; or

(g) <u>Involuntary Bankruptcy</u>. The Mortgagor shall file an answer admitting the material allegation of a petition filed against the Mortgagor in any bankruptcy, reorganization or insolvency proceeding; or

(h) <u>Assignment for Benefit of Creditors</u>. The Mortgagor shall make a general assignment for the benefit or creditors; or

(i) <u>Insolvency</u>. The Mortgagor shall file a petition to or take advantage of any insolvency law; or

(j) <u>Death or Incompetency</u>. If any Guarantor of the Note or any principal officer of the Mortgagor dies or is declared incompetent; or

(k) <u>Financial Condition</u>. If a material adverse change has occurred at any time or times subsequent to the date hereof, in the financial condition, results of operations, operations, business, properties or prospects of Mortgagor, or any Guarantor, or any endorser, co-maker, or surety of the Note, such as by way of illustration and not limitation, a downturn in financial performance, the loss of critical licenses, management exodus or a labor strike; or

(l) <u>Default by Guarantor</u>. If any Guarantor fails to duly pay of perform any covenant, term, provision, or condition of any Guaranty, or fails to duly pay or perform any and all indebtedness, liabilities and obligations (whether joint or several, direct or indirect absolute or contingent, liquidated or unliquidated, matured or unmatured) of any Guarantor to Mortgagee or to any of Mortgagee's affiliated, whether now existing or hereafter created or arising or now owned or howsoever hereafter acquired by Mortgage or by any or Mortgagee's affiliated; or

(m) <u>Failure to Insure</u>. If Mortgagor fails to carry all required insurance coverage as required by the terms and provisions of this mortgage or fails to notify Mortgagee of any lapse of insurance and deliver to Mortgagee replacement insurance as provided in Section 2.7 of the Mortgage; or

(n) <u>Transfer of Interest in Mortgaged Property/Transfer of Interest in Mortgagor</u>. If Mortgagor transfers, sells, conveys or otherwise disposes of any interest in the Mortgaged Property without the prior written consent of Mortgagee, or if any interest in any Borrower is sold, transferred, assigned, pledged, or hypothecated without Lender's prior written consent; or

(o) <u>Subordinate Financing</u>. Mortgagor may permit or cause subordinate mortgages, liens, or encumbrances to be imposed against the Mortgaged Property as long as Mortgagor receives the prior written consent of the Lender whose consent may be unreasonably withheld; or

(p) <u>Other Events of Default</u>. If Mortgagor is the subject of any occurrence described in Subsections (d) through (k), inclusive of the Article; or

(q) <u>Cross Default Provision</u>. Mortgagors' Default or breach under the Note or any other note or agreement in which Mortgagee has an interest shall be a breach under the Mortgage and Mortgagee may invoke any of the remedies permitted by the Mortgage.

**ARTICLE IV**
**MORTGAGEE'S RIGHTS AND REMEDIES**

4.1     _Acceleration and Foreclosure_. If default be made in the payment of any installment of the Note, whether of principal or interest, or in the payment of any other sums of money referred to therein, or in the Mortgage, promptly and fully within fifteen (15) days after the same shall be due without notice or demand therefore, or in the event a breach or default be made by the Mortgagor in any one of the stipulations, agreements, conditions and covenants of the Note, this Mortgage, or any other Loan Documents, or in the event that each and every one of said stipulations, agreements, conditions and covenants are not otherwise dully, promptly and fully discharged or performed then and upon the occurrence of any one of such events, or upon the happening of any other event which, according to the terms of this Mortgage, or the Note shall entitle the holder to accelerate the maturity of the Indebtedness evidenced by the Note, the Mortgagee, at its option, may thereupon thereafter declare the Indebtedness evidenced by the Note, as well as all other monies secured hereby, to be forthwith due and payable, whereupon the principal of and the interest accrued on the indebtedness evidenced and represented by the Note, and all other sums secured by the Mortgage shall immediately become due and payable as if all of said sums of money were originally stipulated to be paid on such day, and thereupon, without notice or demand, the Mortgagee may avail itself of all rights and remedies provided by law and may prosecute a suit at law or in equity as if all monies secured hereby had matured prior to its institution, anything in this Mortgage, or in the Note, or in any of the Loan Documents to the contrary notwithstanding. The Mortgagee may foreclose this Mortgage as to the amount so declared due and payable and the Mortgage Property shall be sold according to law to satisfy and pay the same together with all costs, expenses and allowances, including, without limitation, a reasonable fee for the Mortgagee's attorneys. The Mortgaged Property shall be sold according to law to satisfy and pay the same together with all costs, expenses and allowances, including, without limitation, a reasonable fee for the Mortgagee's attorneys. The Mortgaged Property may be sold in one parcel, several parcels or groups of parcels and the Mortgagee shall be entitled to bid at the sale and, if the highest bidder for the Mortgaged Property or any part or parts thereof, shall be entitled to purchase the same. The failure of omission on the part of the Mortgagee to exercise the option for acceleration of maturity and foreclosure of this Mortgage following any default as aforesaid or to exercise any other option granted hereunder to Mortgagee when entitled to do so in any one or more instances, or the acceptance by Mortgagee of partial payment of the Indebtedness secured hereby, whether before or subsequent to Mortgagor's default hereunder, shall not constitute a waiver of any such default or the right to exercise any such option, but such option shall remain continuously in force. Acceleration of maturity, once claimed hereunder by Mortgagee, at the option of Mortgagee, may be rescinded by written acknowledgment to that effect by Mortgagee, both the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

4.2     _Possession_.     At any time after default hereunder, the Mortgagee is authorized, without notice in its sole discretion to enter upon and take possession of the Mortgage Property or any part thereof and to perform any acts which the Mortgagee deems necessary and proper to conserve the security herein intended to be provided by said property, to operate any business or

businesses conducted thereon and to collect and receive all rents, issues and profits thereof and therefrom, including those past due as well as those accruing thereafter.

4.3    Receiver.    If, any time after a default hereunder, in the opinion of the Mortgagee, a receivership may be necessary to protect the Mortgaged Property, or its rents, issues, revenue, profits or proceeds, whether before or after maturity of the Indebtedness secured hereby and whether before or at the time of or after the institution of suit to collect such Indebtedness, or to enforce this Mortgage, the Mortgagee, as a matter of strict right and regardless of the value of the Mortgaged Property or the amounts due hereunder or secured hereby, or of the solvency of any party bound for the payment of such indebtedness, shall have the right, upon ex parte application, without notice to anyone, and by any court having jurisdiction, in, to the appointment of receiver to take charge of, manage, preserve, protect and operate the Mortgaged Property, to collect the rents, issues, revenues, profits, proceeds and income thereof, to make all necessary and needful repairs, and to pay all taxes, assessments and charges against said property and all premiums for insurance thereon, and to do such other acts as may by such court be authorized and directed, and after payment of the expenses of the receivership and the management of the Mortgaged Property to apply the proceeds of such receivership in reduction of the Indebtedness secured hereby or in such other manner as the court shall direct. Such receivership shall, at the option of Mortgagee, continue until full payment of all sums hereby secured, or until title to the Mortgaged Property shall have passed by sale under this Mortgage. Mortgagor hereby specifically waives its right to object to the appointment of a receiver as aforesaid and hereby expressly agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to the Mortgagee.

4.4    Mortgagee Performance of Mortgagor's Obligations

(a)    Should the Mortgagor fail to make payment of any Taxes or assessments on or with respect to the Mortgaged Property before the same shall become delinquent, or shall fail to make payment of any insurance premiums or other charges, impositions or liens herein or elsewhere required to be paid by the Mortgagor, the Mortgagee, at is option, may make payments of same, and also may redeem the Mortgaged Property from tax sale without any obligation to inquire into the validity of such taxes, assessments and tax sales. In the case of any such payment by Mortgagee, the Mortgagor agrees to reimburse the Mortgagee, upon demand therefore, the amount of such payment with any fees and expenses attendant in making the same, together with interest thereon at the highest rate then allowed by the laws of the State of Michigan, or, if controlling, the laws of the United States; and, until paid, such amounts and interest shall be added to and become part of the debt secured hereby to the extent that this Mortgage secures the repayment of the Indebtedness. Neither the right nor the exercise of the right herein granted unto the Mortgagee to make any such payments as aforesaid shall preclude the Mortgagee from exercising its option to cause the whole Indebtedness secured hereby to become immediately due and payable by reason of the Mortgagor's default in making such payments as hereinabove required.

(b)    The Mortgagee, in making any payment herein and hereby authorized in the place and stead of Mortgagor, relating to Taxes assessments and other governmental or municipal charges, fines, impositions of liens asserted against the Mortgaged Property, may do so according

15

to any bill or statement procured from the appropriate public office without inquiry into the accuracy of the bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof, or relating to any apparent or threatened adverse title, lien, statement of lien, encumbrance, claim or charge. In making payments hereby authorized by the provisions of this section, Mortgagee may do so whenever, in its reasonable judgment and discretion, such advance or advances are necessary or desirable to protect the full security intended to be afforded by this instrument.

4.5     Remedies as to Personal Property. Mortgagee may exercise any or all of its rights and remedies under the Code-Secured Transactions as adopted by the State of Michigan or other applicable law as well as all other rights and remedies possessed by Mortgagee, all of which shall be cumulative. Mortgagee is hereby authorized and empowered to enter the Mortgaged Property or other place where the Personal Property may be located without legal process, and to take possession of the Personal Property without notice or demand, which hereby are waived to the maximum extent permitted by the laws of the State of Michigan. Upon demand by Mortgagee, Mortgagor shall make the Personal Property available to Mortgagee at a place reasonably convenient to Mortgagee. Mortgagee may sell at one of more public or private sales and for such price as Mortgagee may deem commercially reasonable, any and all of the Personal Property secured by the Mortgage, and any other security or property held by Mortgagee and Mortgagee may be the purchaser of any or all of the Personal Property.

4.6     Other. Mortgagee may institute and maintain any suits and proceedings as the Mortgagee may deem advisable (i) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or in violation of this Mortgage; (ii) to preserve or protect its interest in the Mortgaged Property; and (iii) to restrain the enforcement of or compliance with any governmental requirement that may be unconstitutional or otherwise invalid, if the enforcement of compliance with such governmental requirement might impair the security hereunder or be prejudicial to the Mortgagee's interest.

4.7     Remedies Cumulative. The rights and remedies herein provided are cumulative and Mortgagee, as the holder of the Note, and of every other obligation secured hereby, may recover, judgment thereon, issue execution therefore and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby and no enumeration of special rights or powers by any provisions hereof shall be construed to limit any grant of general rights and powers, or to take away or limit any and all rights granted to or vested in Mortgagee by law, and Mortgagor further agrees that no delay or omission of the Mortgagee to exercise any rights or power accruing to it hereunder shall impair any such right or power or shall be construed to be a waiver of any such event of default hereunder or any acquiescence therein; and every right, power and remedy granted herein to the Mortgagee may be exercised from time to time as often as may be deemed expedient by the Mortgagee.

4.8     Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition, seizure of the Mortgage Property by any governmental authority, or other judicial proceedings affecting the Mortgagor, any guarantor, any endorser, co-maker, surety, or guarantor of the Note or any of their respective properties, the

Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claim allowed in such proceedings for the entire unpaid Indebtedness at the date of the institution of such proceedings, and for any additional amounts which may become due and payable after such date.

In the event Mortgagors file a Petition for Relief under any Chapter of the United States Bankruptcy Code, Mortgagors agree that Mortgagee shall be entitled to, and Mortgagors hereby consent to immediate relief from the automatic stay imposed by the bankruptcy code to take any and all actions necessary to enforce any rights that Mortgagee may have under, the Note or Mortgage, including but not limited to, the commencement or continuation of a foreclosure of the mortgage, or otherwise compel the specific performance of any obligation of Mortgagors under this agreement.

4.9    <u>Waiver of Redemption, Notice and Marshaling</u>.  Mortgagor hereby waives and releases, for itself and anyone claiming by, through or under it to the maximum extent permitted by the laws of the State of Michigan (a) any right to claim, take or insist upon any benefit or advantage of any present or future stay, extension, or moratorium law that may affect Mortgagor's rights and obligations hereunder; (b) all rights to have the Mortgaged Property and any other security for the Indebtedness marshaled upon any foreclosure or otherwise; (c) unless specifically required herein, all notices of default of Mortgagee's actual exercise of any option of remedy under the Note or the Loan Documents.

## ARTICLE V
## MISCELLANEOUS

5.1    <u>Transfer of Mortgaged Property.</u>    Mortgagor shall not sell, convey, transfer, encumber or otherwise dispose of any interest in the Mortgaged Property, the Rents, the Improvements, Appurtenances, nor shall Mortgagor permit or cause the First Mortgage to be assumed by any other person or entity, without Mortgagee's prior written consent, which consent may be withheld in Mortgagee's sole discretion. Any encumbrance or transfer of any interest of Mortgagor or Borrower in all or any portion of the Mortgaged Property, the Rents, the Improvements or the Appurtenances or any transfer of any ownership interest in Mortgagor or Borrower, or any assumption of the First Mortgage without Mortgagee's prior written consent, whether voluntary or involuntary, or by operation of law, will be void as to Mortgagee, and constitute and immediate default under this Mortgage, without further notice.

5.2    <u>Successors and Assigns</u>. The Mortgagee and its successors have the right to assign this mortgage throughout the term of the loan. The provisions hereof shall be binding upon the Mortgagor and the heirs, devisees, personal representatives, successors and assigns of the Mortgagor, and inure to the benefit of Mortgagee and its successors and assigns. Where more than one Mortgagor is named herein, the obligations and liabilities of said Mortgagors shall be joint and several. The words "Mortgagor" and "Mortgagee" shall be interpreted to mean singular, plural, feminine, masculine or neuter as the context shall require.

5.3    <u>Applicable Law.</u> This instrument is to be governed by and construed in accordance with the laws of the State of Michigan.

5.4    <u>Satisfaction of Mortgage.</u> If the Mortgagor shall: (a) pay in full (i) all of the Indebtedness (as defined herein), including but not limited to all sums (principal, interest and charges) payable under the Note and any and all extensions and renewals of the same; and (ii) all sums becoming due and payable by the Mortgagor under the terms of this Mortgage, including but not limited to advancements made by the Lender pursuant to the terms and conditions of the Mortgage; and (b) have kept and performed each and every obligation, covenant, duty, condition and agreement herein imposed on or agreed to by the Mortgagor; then the lien and security interest created by this Mortgage shall become null and void and the Lender in such case shall, upon the request of the Mortgagor execute and records property instruments acknowledging satisfaction of this instrument; otherwise, this Mortgage shall remain in full force and effect.

5.5    <u>Notices.</u> Any notice of demand that must or may be given or made in connection with this Mortgage must be in writing and, unless receipt is expressly required, will be deemed given, delivered or made, as the case may be, when delivered by personal delivery or when mailed by Express mail, or by certified or registered mail, return receipt requested in any event, with sufficient postage affixed, and addressed to the parries as follows:

TO MORTGAGOR:    8255 Second Avenue, LLC
                 1778 Grant
                 Birmingham, MI 48009
                 Attn: Mr. Scott Sitner, Manager

TO MORTGAGEE:    B & W Real Property Associates, L.L.C.
                 18175 Maryland
                 Southfield, MI 48075
                 Attn: Martin Weinstock, Owner

Such Addresses may be changed by notice pursuant to this section; but notice of change of address is effective only upon receipt. All of the persons executing this Mortgage as Mortgagor severally agree that a single notice to Mortgagor in the manner provided in this section will be effective to bind each such person for all purposes.

5.6    <u>Maximum Interest Rate.</u>
(a)    Any sums which shall not be paid when due, whether maturing by lapse of time or by reasons of acceleration under provisions of the Note, or this Mortgage, and whether principal, interest or money owing for advancements pursuant to the terms of this Mortgage or any other document or instrument executed as security for the Indebtedness shall bear interest at the highest rate allowed by law.
(b)    Nothing herein contained nor any transaction related thereto shall be construed or so operate as to require the Mortgagor to pay interest at a rate greater than it is now lawful in such case to contract for, or to make any payment or to do any act contrary to law, and the Mortgagee shall reimburse the Mortgagor for any interest paid in excess of the highest rate allowed by law or any other payment which may inadvertently be required to be paid contrary to law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Mortgage, the Note, or other Indebtedness secured hereby in whole or in part, the

18

such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this Mortgage shall remain operative and in full force and effect.

5.7 Survival of Representation, Warranties and Covenants. The warranties, representations, covenants and agreements set forth in this Mortgage shall survive the making of the loan and the execution and delivery of the Note shall continue in full force and effect until all of the Indebtedness shall have been paid and performed in full.

5.8 Waiver, Delay or Omission. No waiver of any Default hereunder shall extend to or affect any subsequent or any other Default then existing, or impair any rights, powers or remedies consequent thereon, and no delay on omission of Mortgagee to exercise any right, power or remedy shall be construed to waive any such Default or to constitute acquiescence therein.

5.9 Invalidity. If any one of more of the provisions contained in this Mortgage, the Note or any other Loan Documents is declared or found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, such provision or portion thereof shall be deemed stricken and severed and the remaining provisions hereof shall continue in full force and effect.

5.10 Modification. No agreement unless in writing signed by Mortgagee and no course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge, or release in whole or in part any provision of this Mortgage. No waiver of any rights or powers or Mortgagee or consent by it shall be valid unless in writing signed by an authorized officer of Mortgagee and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

5.11 Joint and Several Liabilities. If more than one person or entity executes this Mortgage, each is and shall be jointly and severally liable hereunder.

5.12 Prepayment Penalty, Origination, Exit, Extension, Broker, Consulting, Document Preparation or Other Fees. This Mortgage secures payment of any Prepayment Penalty, Extension, Exit, Origination, Broker, Consulting, Document Preparation or any other fee or fees (the "Fees") due under the Note, which must be paid off with the debt owed secured by this Mortgage or the lien of this Mortgage and cannot be discharged until all Fees have been paid.

5.13 Waiver of Trial by Jury. BY THE EXECUTION HEREOF, MORTGAGOR KNOWINGLY, VOLUNTARILY AND INTENTIONALLY HEREBY AGREES, THAT:

(A) NEITHER THE MORTGAGOR, NOR ANY ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF THE SAME SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE ARISING FROM OR BASED UPON THIS MORTGAGE, THE NOTE, ANY GUARANTY, OR ANY OF THE LOAN DOCUMENTS EVIDENCING, SECURING, OR RELATING TO THE INDEBTEDNESS WHICH IS SECURED HEREBY, OR THE DEALINGS OR RELATIONSHIP BETWEEN OR AMONG THE PARTIES THERETO;

(B)      NEITHER THE MORTGAGOR NOR MORTGAGEE WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN OR CANNOT BE WAIVED.

(C)      THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS;

(D)      NEITHER THE MORTGAGOR, NOR MORTGAGEE HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES; AND

(E)      THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE.

Mortgagor, IN WITNESS WHEREOF, has signed and sealed this instrument as of the day and year first above written.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT - OR THE PRINCIPAL BALANCE DUE UPON MATURITY - IS $155,000.00, TOGETHER WITH ACCRUED INTEREST AND EXIT FEE, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE PLUS THE EXIT FEE DUE UNDER THE NOTE.**

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT FORECLOSURE JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO ENTER A FORECLOSURE JUDGMENT BY JUDICIAL FORECLOSURE AND COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH THIS AGREEMENT, OR ANY OTHER CAUSE.**

     **MORTGAGOR**

     8255 Second Avenue, LLC, a Michigan limited liability company
     By: _____
          Scott Sitner
     Its:     Manager

STATE OF MICHIGAN        )
                         ) ss.
COUNTY OF OAKLAND        )

    The foregoing instrument was acknowledged this ___ day of July 2025, Scott Sitner, as Manager on behalf of 8255 Second Avenue, LLC, a Michigan limited liability company, as his free act and deed, who is personally known to me or who produced a Driver's License or United States Passport as identification.

                      _____

                      Notary Public_____(Printed Name)
                      Oakland County, Michigan
                      My Commission Expires: _____

Prepared by and, when recorded, return to: David Weinstock at 18175 Maryland, Southfield, MI 48075.

SHLOMO WEITZ
Notary Public, State of Michigan
County of Oakland
My Commission Expires Dec. 02, 2030
Acting in the County of Oaklw

**EXHIBIT A**
**LEGAL DESCRIPTION**

Land situated in the City of Detroit, County of Wayne, State of Michigan, to wit:

Lots 77 and 78, The Peerless Add. Sub. No. 2, according to the plat thereof, as recorded Liber 18 Page 39, Wayne County Records.

Parcel ID: 04/001866-7

C/K/A: 8255 Second Avenue, Detroit, MI 48202

# EXHIBIT N

2025205561    L: 59647 P: 418    DIS
07/08/2025 02:28:53 PM   Total Pages: 2
Bernard J. Youngblood, Register of Deeds - Wayne County, MI
**ELECTRONICALLY RECORDED**

## DISCHARGE OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that B & W Real Property Associates, LLC
Whose address is 18175 Maryland, Southfield, MI 48075,

Does hereby certify that a certain Indenture of Mortgage dated 01/31/2025, made and
executed by 8255 Second Avenue, LLC of the first part, to B & W Real Property
Associates, LLC, and recorded in the Register's Office for the County of Wayne and
State of Michigan, in Liber 59334, Page 762 on 02/06/2025,

## LEGAL DESCRIPTION ATTACHED AS "EXHIBIT A"

Is fully paid, satisfied and discharged.

Dated this ____ day of July, 2025

Signed: _____
B & W Real Property Associates, LLC
By: David Weinstock
Its: Manager

STATE OF MICHIGAN       )
                       )SS.
COUNTY OF OAKLAND     )
The foregoing instrument was acknowledged before me this ___ day of July, 2025, by
David Weinstock, manager of B & W Real Property Associates, LLC

_____
Notary Public

SHLOMO WEITZ
Notary Public, State of Michigan
County of Oakland
My Commission Expires Dec. 02, 2030
Acting in the County of _Oakln_

_____ County, Michigan
My commission expires: _____

Drafted by and when recorded return to:
David Weinstock
18175 Maryland, Southfield, MI 48075,

## Exhibit A- Legal Description

Land situated in the City of Detroit, County of Wayne, State of Michigan, to wit:

Lot 77 and 78, The Peerless Add. Sub. No.2, according to the plat thereof, as recorded in Liber 18 Page 39, Wayne County Records.

Parcel ID 04/001866-7

C/K/A:  8255 Second Ave, Detroit, MI 48202